# SUPREME COURT OF TEXAS.

## TYLER TERM, 1882.

### HARDESTY BROS. v. HENRY FLEMING.

#### (Case No. 4540.)

1. ASSIGNMENT OF ERRORS — EFFECT OF ABSENCE OF.— Where there is no assignment of errors only such objections can be considered as go to the foundation of the action, and from which it plainly appears that the judgment is erroneous.

2. TAXES ILLEGALLY ASSESSED — RECOVERY BACK.— Where illegally assessed taxes are paid under protest, after seizure, the money paid may be recovered back in a suit promptly brought against the officer, before he is required to pay it over.

3. SAME — BOARD OF EQUALIZATION.— This right to recover back exists although the tax-payer had not appeared before the board of equalization and contested the assessment.

4. PERSONAL PROPERTY — LIABILITY OF, TO TAXATION — NON-RESIDENCE OF OWNER.— It is not necessary that the owner should reside within the state to render personal property, situated within the state, liable to taxation.

5. FACT CASE.— See this case for circumstances under which it was held that cattle from the Indian Territory, allowed to remain within the state for about five months, including January 1, 1880, were not so plainly shown not to be " situated " within the state as to justify a reversal of a judgment denying a recovery back of taxes for 1880, assessed and paid.

APPEAL from Wheeler. Tried below before the Hon. Frank Willis.

This suit was brought by appellants to recover from appellee, who is the collector of taxes for Wheeler county, the amount named in the petition, claimed to have been paid as taxes under protest, and after a seizure of their property. They also claimed that the assessment was illegal; that they owned no property in the state of Texas, January 1, 1880, and therefore owed no tax; that they were citizens of Kansas, and kept their cattle in the Indian Territory, and if any of their cattle were in Hansford county January 1, 1880, that they were there without their consent, having been drifted there by snow storms, and that they were removed from the state as soon as they could gather them.

Appellee answered that the assessment was legal, and payment was properly made.

The case was tried by the court without a jury, and judgment was rendered against the appellants that they take nothing by reason of their suit, etc. From that judgment this appeal was taken. There was no assignment of errors in the record. The court found conclusions of fact as well as law, which were as follows:

1. That plaintiffs are citizens of Kansas, as alleged in their petition, and in 1880, January 1st, they had their headquarters of a ranch of about ten thousand head of cattle on the neutral strip, Indian Territory, some ten miles north of the Texas Pan Handle.

2. That during said winter of 1880 and 1881, plaintiffs had a ranch, composed of camp outfit and feed, for part of their hands and horses, about eight miles south of the state line, in Hansford county, at which part of their hands stayed, claiming that they were there for the purpose of preventing the drifting of plaintiffs' cattle into Texas during storms, etc.

3. That about January 1, 1880, there were as many as two thousand head of plaintiffs' cattle in Hansford county, which were for said year assessed by the assessor of Wheeler county, the total of state and county taxes assessed against said cattle being in the aggregate $250.62.

4. That plaintiffs' cattle came into Texas, to the amount before stated, and remained in Texas probably from early winter until about May 1st, grazing in Hansford county and vicinity, said county being attached to Wheeler for judicial purposes.

5. That said taxes were placed upon the tax roll of Wheeler county and attached counties, and were approved by the commissioners' court of Wheeler county, and placed in the hands of defendant as sheriff of said county to be collected, he being duly charged therewith on said roll.

6. That defendant proceeded in June, 1881, with a warrant duly issued to collect said taxes, the plaintiffs never having appeared before the board of equalization of Wheeler county and asked that said assessment be corrected or set aside because of any illegality. That defendant levied on twenty-eight head of plaintiffs' cattle for said taxes by virtue of said warrant, and advertised and was about to sell them in June, 1881, when plaintiffs paid the full amount with the legal costs, etc., amounting to $323.62, which plaintiffs paid under protest to prevent the sale thereof.

7. That said cattle so assessed in Hansford county were not assessed elsewhere, nor did plaintiffs pay taxes on said cattle elsewhere for said year 1880.

8. The court finds as a conclusion of law, based upon the above

facts, that they were legally assessed in Hansford county, Texas. That the defendant was proceeding legally to collect said taxes, they being a legal charge against plaintiffs; and that although plaintiffs paid the same under protest, they are not entitled in law to recover the same back in this suit, and judgment is therefore rendered herein for defendant.

*Throckmorton & Brown*, for appellants.

I. If the taxes were illegally assessed, and plaintiffs paid after seizure of their property to prevent its sale, and under protest, they have a right to recover the money from the officer to whom it was paid.   Galveston Co. *v.* Gorham, 49 Tex., 301; Baker *v.* Panola Co., 30 Tex., 86; City of Marshall *v.* Snediker, 25 Tex., 470.

II. The power of the state to levy taxes upon property is limited to such property as is owned within its limits on the 1st day of January of each year.   R. S., art. 4662.

III. Personal property, in the eye of the law, has no locality, but attends the person of the owner, and is subject to taxation in the state where he resides.   St. Louis *v.* Ferry Co., 11 Wall., 430.   See authorities under fourth proposition.

IV. The appellants being citizens of Kansas, holding and owning their cattle in the Indian Territory, the state of Texas had no jurisdiction to tax their property temporarily within its jurisdiction. Burroughs on Taxation, sec. 40; Cooley on Taxation, p. 121; R. R. Co. *v.* Pennsylvania, 15 Wall., 323; Morgan *v.* Parham, 16 Wall., 476; People *v.* Niles, 35 Cal., 282; Oakland *v.* Whipple, 39 Cal., 112; State *v.* Haight, 30 N. J. L., 428; St. Louis *v.* Ferry, 11 Wall., 430.

The Revised Statutes of Texas, art. 4662, authorized the levy of taxes upon all property *owned* in Texas on the 1st day of January of each year.   By using the words " owned in the state," the legislature made the liability of property to taxation depend upon its ownership in Texas and not upon its actual presence here.   Personal property has, in law, no locality, but attends the person of the owner. If conveyed to another, it must be done according to the law of the owner's residence, or place of the contract, and not that of the country in which it actually is situated at the time.   A will as to personalty must be executed according to the laws of the country of the owner's residence at the time and upon the death of the owner; without having made a will, it descends according to the laws of his domicile or residence, however different from that of the place where the property may be at the time.   Sale, will and inheritance are the means by which the ownership is transmitted from

one person to another, and being governed by the same laws that govern the person of the owner, the ownership attends the person, and the property is owned wherever he resides, and not where it is at the time; therefore property within this state *temporarily*, belonging to a non-resident, is not *owned* in this state, but in the state of his residence, and the property of plaintiffs did not come within the terms of the statute. In the case of R. R. Co. *v.* Pennsylvania, 15 Wall., 323, the supreme court of the United States held that the property of a non-resident was not owned in that state; and in State *v.* Haight, 30 N. J., 428, it was likewise held that a vessel which was within the limits of that state temporarily, but the owners of which resided in New York, was not owned in New Jersey.

The laws of a state can have no extra-territorial force, and cannot be made to operate upon persons and property beyond its jurisdiction. It is well settled that a state may exact from those residing within its limits, taxes upon their personal property actually situate within another state. It cannot be said that the levy is upon the property in this instance, for that is beyond the state's jurisdiction, and the law acts upon the owner, and not upon the property. If, then, the owner resides beyond the jurisdiction of the legislature, how can it be held that the law can act directly upon personal property, the ownership of which is beyond its reach? It is true that where the owner voluntarily brings his property within the jurisdiction of the state, and maintains or keeps it there *permanently*, he renders it liable to taxation, because he thus seeks the protection of the laws of the government, and, upon the common principles of right, should be required to contribute to its support. But it is not every one who receives protection that is or ought to be required to assist in bearing the burdens of government. It is held in many cases cited in the brief, that property brought into a state in the regular course of business, but remaining but brief periods of time, is not subject to taxation, although in the state on the very day named in the law. The case of St. Louis *v.* Ferry is one in which the defendant had agencies and officers permanently within the city, and its property was frequently within its jurisdiction, carried there by defendant for profit. Also, in State *v.* Haight, the property had its regular times of arriving within the state's limits, and defendant, by this means, transacted business there. In both of these cases the property was entitled to as full and complete protection, while there, as that of any resident or citizen. It is apparent upon principle and authority that the mere presence of property within the territorial limits of a state at a given time does not authorize the assessment of taxes

against it. The right to tax rests upon the more liberal basis of residence of the owner, or a permanent appropriation of the benefits of government by keeping and maintaining his property within its limits under the protection of its laws.

From the judge's finding it is clear that plaintiffs were citizens of another state, and that their ranch was not in the limits of this state; that plaintiffs had horses, etc., in Texas, to prevent their cattle from drifting into the state; that on the 1st day of January, 1880, their cattle, or a portion of them, were within the limits of the state despite their efforts to the contrary, and that their stay was temporary, as it is found that the cattle were there "probably from the early winter until about May 1st."

*J. N. Browning*, for appellee.

I. The tax rolls were full and sufficient authority for the defendant, as tax collector, to receive and collect the taxes therein levied; and the fact that the plaintiffs paid their tax under protest would not render the defendant liable for a return of the same, even if they should afterwards prove that such tax was illegally assessed. R. S., arts. 4737, 4738, 4746, 938, 939; Erskine *v.* Holmbach, 14 Wall., 613; Cooley on Taxation, 559–561; Nowell *v.* Tripp, 61 Me., 426; Same Case, 14 Am. Rep., 572, and cases cited.

II. All property, real, personal or mixed, within this state, except such as is expressly exempted by law, is subject to taxation. And all property is required to be listed and assessed for taxation in the county where situated, except such as is required to be otherwise listed and assessed, regardless of the residence of the owner. Const., art. VIII, secs. 1 and 11; R. S., arts. 4669, 4673; ch. 50, sec. 1, Acts of 1879.

WATTS, J. COM. APP.— As was said by Chief Justice Moore in the case of R. G. R. R. Co. *v.* Scanlan, 44 Tex., 650, "There is no assignment of errors in the record, and only such objections can be considered as go to the foundation of the action, and from which it plainly appears that the judgment is obviously erroneous. We will merely, therefore, briefly consider the objections made to the judgment, which counsel for appellant insists are of this character."

Appellants' first proposition is as follows, to wit: "If the taxes were illegally assessed, and plaintiffs paid after seizure of their property to prevent its sale, and under protest, they have a right to recover the money from the officer to whom it was paid."

The principle of law announced is in a qualified sense correct.

If the taxes assessed were illegal, and paid under protest after seizure, the officer is liable provided the suit is promptly brought, before the officer is required to pay over the money under the law or instructions of the comptroller. But, notwithstanding the protest, if he delay his suit in such way as to indicate that he had abandoned the contest, or until after such time as the officer is required to pay over the money, then we are of the opinion that the action would not be maintainable against the collecting officer. See Cooley on Taxation, pp. 567 and 568, and authorities cited.

Appellee claims that as the appellants did not appear before the board of equalization and contest the assessment, that they can maintain no action against him, for that he is charged with the amount shown by the rolls, and that there is no means by which he can exempt himself from that obligation.

In treating of the powers of the comptroller, the Revised Statutes provide that " He shall remit or make an allowance to every tax collector in the auditing of his accounts for all sums of money which, in his judgment, have been illegally assessed." Art. 2754.

The collector could, when the protest was made, have retained the money that was collected as state tax, and submitted to the comptroller the matter for his action. On failing in this he could have retained the fund collected for the state, and reported to the comptroller the fact that a suit was then pending to determine the legality of the assessment. As to that part of the fund collected for the county, the commissioners' court had full power to correct the matter, and in that way protect the officer; or he could have retained the fund, and reported to that court the pendency of the suit to determine the illegality of the assessment.

In filing their amended petition, appellants failed to observe the rules of court in giving the date upon which the original petition was filed, but from the date of the filing of other papers in the record, it appears that the suit was brought with reasonable promptness.

Appellants' second, third and fourth propositions are as follows:

" The power of the state to levy taxes upon property is limited to such property as is owned within its limits on the 1st day of January of each year."

" Personal property, in the eye of the law, has no locality, but attends the person of the owner, and is subject to taxation in the state where he resides."

" The appellants being citizens of Kansas, holding and owning

cattle in the Indian Territory, the state of Texas had no jurisdiction to tax their property temporarily within its jurisdiction."

Considering the various sections of our statute upon the subject of taxation, in connection with the several provisions of our constitution with regard to the same subject, it does not seem to us that to render personal property liable to taxation that its owner must reside in the state. The constitution provides that " All property, whether owned by persons or corporations, shall be assessed for taxation, and the taxes paid in the county where situated." It is beyond the power of the legislature to exempt from taxation any property made subject thereto by the constitution except certain specified property, such as places of religious worship, places for the burial of the dead, etc. The language used in art. 4662, Revised Statutes, as follows, " and all movable property owned in this state on the 1st day of January of each and every year," when construed in the light of the various constitutional provisions upon that subject, does not mean that the owner of the· property must reside in the state on the 1st day of January to render it taxable. The legislative intent with respect to this character of property was, that if it had a *status* here, that is, was situated here, as distinguished from property merely passing through, or temporarily within the state for the purposes of trade, and other like purposes, then that such property should be subject to taxation. This interpretation derives support from a fair construction of art. 4671, where money, credits, bonds and other evidences of debt owned by citizens of the state, are taxed whether the same be in or out of the state. There is no such provision with respect to cattle and other like property.

Art. 4676 provides that " All property, real and personal, except such as is required to be listed and assessed otherwise, shall be listed and assessed in the county where it is situated."

We conclude that as to such personal property as cattle, horses and other stock, that if it is situated in the state, it then becomes subject to taxation.

From the finding of the court it appears that appellants had about two thousand head of cattle in Hansford county; that they came there in the early winter and remained until about the 1st day of May. It also appears that the appellants had a ranch, composed of a camp outfit and food for part of their hands and horses, about eight miles south of the Texas line. The inquiry would naturally arise, why, if the appellants did not desire their cattle to come into the state, did they establish their line of sign riders eight miles from

the boundary. And to this circumstance, doubtless, the court below attached importance. At any rate, it appears that these cattle were in the state for about five months, including the 1st day of January; that they were not passing through the state, nor brought here for the purposes of trade.

There is nothing in the record that would necessarily lead to the conclusion that these cattle were not, in the meaning of the law, *situated* in Hansford county on the 1st day of January, 1880.

An examination of the record fails to disclose any such fundamental error as would require the reversal of the judgment, which ought, therefore, to be affirmed.

                                                            AFFIRMED.

[Transferred to Tyler, and opinion delivered October 24, 1882.]