THE PRAIRIE CATTLE COMPANY v. J. C. WILLIAMSON, *Treasurer*, AND F. D. HEALY, *Sheriff of Beaver County.*

1. TAXATION—*Personal Property—Where Assessed.* By § 1, art. 5, Session Laws, 1895, it is provided that "where any personal property shall be located in any county of this territory after the first day of March of any year, which shall acquire an actual situs therein before the first day of September, such property shall be assessed, &c." and § 2 of the same article further provides that "Whenever any live stock shall be locatad in this territory for the purpose of grazing, it shall be deemed to have acquired an actual situs therein." And where the proof shows that cattle owned in another state or territory actually ranged and grazed in a certain county of Oklahoma during the entire year; *held*, that such cattle were properly taxable in such county.

2. SAME—*Situs of Personal Property.* While it may be stated, as a general proposition of law, that personal property has no situs except that of the domicile of the owner, yet this doctrine yields wherever it is applied to the taxation of personal property.

3. SAME—*Where Double Taxation May be Imposed.* Because a cattle company has already listed its property for taxation in another state and the imposition of taxes in this territory may result in double taxation, such fact does not make the tax in this territory illegal. Each taxing jurisdiction has the right to determine for itself how the taxes within its own jurisdiction shall be levied.

*Error from the District Court of Beaver County.*

The opinion states the facts.

*J. C. Gunter* and *A. S. Dickson*, for plaintiff in error.

*R. H. Loofborough, County Attorney*, for defendant in error; of counsel, *Harper S. Cunningham, Attorney General.*

The opinion of the court was delivered by

DALE, C. J.:  This case comes up from the district court of Beaver county and is brought here to reverse a

judgment of the lower court in holding that certain taxes levied against the personal property of the Prairie Cattle company, a corporation, were rightfully so levied. The trial court made no finding of facts, but we have the evidence upon which the judgment was based, and from such record it appears that the Prairie Cattle company has its home ranch and headquarters about eighteen miles south of La Junta, Colorado; that such corporation owns about 16,000 head of cattle, which are made up of all classes and ages, and subsist during the entire year upon such grass and water as they can procure by ranging over a very large area of country in southeastern Colorado and northwestern New Mexico, and portions of Beaver county, Oklahoma. That the corporation, by ownership and lease, have obtained control of portions of the water privileges and lands extending over an area, in places, of about one hundred miles north and south, and eighty miles east and west, lying in the southeastern portion of Colorado, and the northwestern part of New Mexico. That included within this range are large bodies of the public domain, and also numerous other cattle companies and individuals engaged in grazing cattle, and who are the owners or lessees of such other water privileges and lands as are not owned or controlled by the Prairie Cattle company. This range runs down on the southeast to the vicinity of the north and the west lines of Beaver county, Oklahoma, and numbers of cattle belonging to corporations and individuals drift into Beaver county during storms and at other times for the purpose of procuring water and grass. Owners of such cattle do not claim any grazing rights in Beaver county, and at the spring and fall round-ups throw their cattle back onto their own range, and during such season of the year as the cattle are likely to drift into Beaver county,

keep men employed to ride the ranch line and throw back into their own range such cattle as they may find are drifting off and into said Beaver county; but notwithstanding their efforts to keep them out, some of their cattle are always, at each round-up, found in Beaver county, and each year the assessor of the township in Beaver county where the cattle are so found, lists the same for taxation.    At the spring round-up in 1895 about 800 head of cattle belonging to the Prairie Cattle company were found in Cleveland township, of Beaver county, and the assessor of such township returned for taxation against the company 600 head.    One of the witnesses for the defendant in error testified that he thought 600 to be a reasonable estimate of the number of cattle belonging to the Prairie Cattle company, which would be in Cleveland township, Beaver county, most of the year, and that such a number was the average of what might range there during the entire year.

It is to defeat the attempt to so tax the cattle that this suit was instituted in the court below, and in its petition filed therein, it is alleged, among other things, that the Prairie Cattle company has its home ranch near Higby, Otero county, Col., holds real estate in Bent, Otero, Las Animas and Baca counties, in such state, and in Union and Colfax counties, in the territory of New Mexico; does not own or control any real estate in the Territory of Oklahoma, and that all of the cattle owned by the company were assessed for taxation in the counties of Colorado and New Mexico above named, and it is the intention of the corporation to pay the taxes so levied when they shall become due.    That it has been the intention and purpose of the corporation to keep all of its range cattle in the state of Colorado.    That notwithstanding such efforts small numbers drifted down into

Beaver county, Oklahoma, against the will of the agents of the corporation, but were always, as soon as discovered, driven back into Colorado. To the petition an answer was filed, which, in substance, alleged that the cattle assessed were located in Beaver county after the first day of March, 1895, and acquired an actual situs therein before the first day of September of such year.

Under the pleadings and facts in this case the only question to determine is: Were the cattle subject to taxation in Beaver county? By § 1, art. 5. Session Laws 1895, p. 229, it is provided that:.

"When any personal property shall be located in any county of this territory after the first day of March of any year, which shall acquire an actual situs therein before the first day of September, such property is taxable therein for that year and shall be assessed and placed on the tax roll, and the tax collected as provided by this act."

Section 2, of the same act, which follows the one just quoted, reads as follows:

"Whenever any live stock shall be located in this territory for the purpose of grazing, it shall be deemed to have acquired an actual situs therein as contemplated by this act."

If the cattle had acquired a situs within the meaning of the sections above quoted, then they are taxable. In view of these provisions of our statute it would appear that this case must largely turn upon the facts. Under the evidence it appears that 600 head of cattle belonging to the Prairie Cattle company were upon an average, for the year 1895, grazing in the township in Beaver county in which they were sought to be taxed. It is true the same cattle were not there all that time, but that was the number which, if they were there located for the purpose of grazing, must under our law be deemed to have

acquired an actual situs for grazing purposes, and it makes no difference that they were there against the will and consent of the agents of the Prairie Cattle company. The situs of the property does not necessarily depend upon the will or intention of the owner.

While it may be stated, as a general proposition of law, that personal property has no situs except that of the domicile of the owner, yet this doctrine yields whenever it is applied to the taxation of personal property. (Story on Conflict of Laws, § 550; *First Nat'l Bk. of Mendota v. Smith etc.*, 65 Ill. 44; *Graham v. Chautauqua County*, 31 Kan. 473; *Hardesty v. Flemming*, 57 Tex. 395; *Pierce v. Eddy*, 152 Mass. 594).

And because the cattle company has already listed its property for taxation in Colorado, and the imposition of taxes in Beavor county will result in double taxation, such fact does not make the taxes in Oklahoma illegal, as each tax jurisdiction has the right to determine for itself how the taxes within such jurisdiction shall be levied. (*Blackstone Mfg. Co. v. Blackstone*, 13 Gray, [Mass.], 488; *Leonard v. City of New Bedford*, 16 Gray, [Mass.], 292).

In view of the law, as above stated, we must determine whether or not the evidence in this case warranted the court below in finding as a fact that the cattle had obtained a situs in Beaver county which would subject them to taxation in such taxing district. Numerous decision are cited by council for appellant in support of their contention that, under the facts of this case, as a matter of law, the cattle had obtained no situs in Oklahoma, and we will notice briefly some of the cases referred to.

In *Conley v. Cheddic*, 7 Nevada, 836, it appears that taxes were sought to be assessed against some logs which were being taken through the county, and the court held

that they were in such county merely *in transitu*, they had gained no situs, and they were not taxable.

In *Barnes v. Woodberry*, 17 Nev 383, the owners of a large number of cattle turned them loose in one county in the spring of the year, and in grazing, a part of them went into an adjoining county and remained therein for a period of about six months. The majority of the court held that by so doing the cattle did not obtain a situs within such adjoining county, but that the location of the home ranch governed their location for taxing purposes. While the facts in that case are somewhat analogous to the one we are considering, yet a full reading of the dissenting opinion detracts considerably from the force of the decision as rendered by the majority of the court.

In *Ford v. McGreggor*, 20 Nev. 444, the court held that where sheep were driven from the home ranch into another county to be kept temporarily they did not gain a situs in the county into which they were so driven. In that case it appears that the owners drove a large number of sheep from their ranch into an adjoining county for grazing purposes, intending to keep them there for about two months, and the court held that such use of the sheep did not change their situs.

In *Rhyno v. Madison*, 43 Ia. 632, it is held that because the statute of Iowa declares that "the assessor shall list every person in his township, and assess all the property personal and real therein," that such language does not necessarily mean that the personal property which happens to be in the township upon the first day of January of each year shall come within the provisions of the statute, and that property in the township for temporary purposes is not taxable therein.

*Holcomb et al. v. Kelliher*, 5 S. Dak. 438, is a case where the home ranch was near an Indian reservation,

and the cattle, and horses used in herding the same, ranged upon such reservation, as well as in the county where the range was located, and the court, in passing upon such case, held that the situs of the stock was at the home ranch. We think this Dakota case in point, but the statutes of the state upon which the suit was based does not go to the extent of attempting to fix the situs of live stock, as does the provision of § 2, *supra*, of our act.

Our attention is further directed to *Hays v. Pacific Mail Steamship Company*, 17, How. 596; *St. Louis v. Wiggins Ferry Co.* 11 Wall. 423, and *The People v. Pac. Mail Steamship Co.* 58 N. Y. 242.

In *Hays v. Pac. Mail Steamship Co.* it was sought by the authorities at San Francisco to subject a vessel of the Pacific Mail Steamship company to taxation, because such vessel happened to be in the harbor at San Francisco at the time when, under the laws of California, property was required to be assessed for taxation. The supreme court of the United States held that the vessel, being registered in the port of New York, and the presence of such vessel in the port of San Francisco being merely for the purpose of taking on or unloading a cargo, the situs of the vessel was at the port of registration.

In *St. Louis v. Wiggins Ferry Co.* the St. Louis taxing officers undertook to levy a tax upon the boats of the ferry company operating to and from that side to the Illinois shore. The facts of the case show that the ferry company had erected upon the Illinois side their offices and docks and places where all their boats were kept while not in use, and were claiming such point as their place of business.

In *The People v. The Pac. Mail Steamship Co.* it was held that where steamships were registered at the port of New York and sent to the Pacific ocean to trade, and had not after leaving the port of New York registered anew, they were properly taxable in New York; also that where parties residing in the state of New York contracted with parties in Delaware to build steamships, under an agreement to pay for the same from time to time as the work progressed, and payments had been made upon such contract, such uncompleted vessels were the property of the New York parties and were taxable. We have not the statute of the state of New York before us and do not know whether the right to levy a tax against the individual owners of the uncompleted vessels was based upon the provisions of the New York statute, but presume it was.

The foregoing are all the cases which are cited in the brief of counsel for appellant to support the contention that the situs of the property is governed by the intention of the owners thereof, and in the present case by the headquarters or home ranch of the corporation.

*Barnes v. Woodbury* and *Holcomb et al. v. Kelliher*, *supra*, are the two cases wherein the facts, as we gather from a reading of the opinion, are somewhat analogous to those of the case we are here considering. In the former the dissenting opinion in its reasoning and authorities cited appears to us to be worthy of great consideration. In the Dakota case much stress is laid upon the fact that the trial court by a finding of fact from the evidence had reached the conclusion that the situs of the property was at the home ranch of the company. In neither Nevada nor Dakota did the legislature of the state attempt to specifically determine when an actual

situs of live stock shall have been acquired, as is the case in this territory, and no decision has been cited wherein such a statute was under consideration. No suggestion is made that it was not within the province of the legislature to pass such an act, and, in fact, we think it may be said that the legislature has not intended by its act to impose a liability by way of taxation upon transient property or upon live stock *in transitu*, but do think that it was intended by the law-makers that where cattle were located, for grazing purposes, after the first day of March and before the first of September of any year, to require them to be listed for taxation. In the case under consideration it resolves itself finally into the one question as to whether or not the cattle were located in Beaver county for grazing purposes, and this case must be determined upon that one question. The court below, in order to have rendered its judgment, must have found that the cattle were located for grazing purposes in Beaver county between the first day of March, and the first day of September. We think such fact is warranted under the evidence in this case. Such being true, and the law of this territory providing for the taxation of such live stock when so located, we think the conclusion of the lower court was correct and must be sustained.

Bierer, J., having presided at the trial below, not sitting; all the other Justices concurring.