In re **JOHNSON OIL REFINING CO.'S PROPERTY** (four cases).

**BOARD OF COUNTY COM'RS OF PAWNEE COUNTY et al. v. JOHNSON OIL REFINING CO.**

Nos. 23218, 23219, 23334, 23342. Opinion Filed Dec. 20, 1932.

Rehearing Denied Jan. 31, 1933.

C. E. Mitchell, Co. Atty., Ed Waite Clark, P. E. Rowe, and R. K. Robertson, for Pawnee County.

C. K. Templeton, Co. Atty., Leander Hall, Frank T. McCoy, John R. Pearson, and John T. Craig, for Osage County.

Chas. Y. Freeman, McCollum & McCollum, and West, Gibson, Sherman, Davidson & Hull, for Johnson Oil Refining Company.

RILEY, J. Causes Nos. 23218 and 23219 originated in the county treasurer's office of Pawnee county. They were begun by the tax ferret. Appeals were taken to the county court and tried there by stipulation upon the same evidence. The appeals here are separate. The county court directed the entry

upon the tax rolls of the taxable value of 380 tank cars owned by the Johnson Refining Company for the years 1925-28, inclusive. The taxable situs was found to be at Cleveland, Pawnee county, Okla. From the county court appeals were perfected to this court.

Cause No. 23342 originated in the board of equalization of Pawnee county. The Johnson Refining Company had listed for taxation for the year 1931, tank cars in the number 64. The board upon notice assessed 381 such cars. The refinery appealed to the district court, where a judgment was entered directing the taxation of what was found to be the average number of tank cars (64) situated in the county during the year. From that judgment both the county and the taxpayer have appealed to this court.

These tank cars are engaged in interstate and intrastate commerce. By the use of them the Johnson Oil Refining Company transports refined petroleum products from its refinery at Cleveland, Pawnee county, Okla., to various points within and without this state. Occasionally the refinery purchases for resale products from other refineries, and in that event the cars are shunted elsewhere for that purpose. These cars are marked: "Johnson Oil Refining Company, Cleveland, Oklahoma," or "When empty return to Johnson Oil Refining Company, Cleveland, Oklahoma." The empty cars are, unless diverted by special order, as aforesaid, returned to Cleveland. Repair trackage is maintained at Cleveland. This accommodates from 12 to 15 cars, and at that point alone is located replacements and material for repair of these cars. Other trackage at Cleveland accommodates 65 cars. The refinery loads from 35 to 40 cars per day. The cars upon return remain upon the tracks from 24 hours to 10 days, depending on demand. This company is incorporated under the laws of Illinois and maintains an office at Chicago, but no trackage for the cars is there. Cleveland is the one place where the company always has use for these cars. All of these cars are allocated to the refinery at Cleveland, although movements of the cars in the delivery of products seems to be the result of sales contracts made from the office at Chicago. O. C. Goward is the superintendent of transportation for the refinery whose location is Cleveland. The Cleveland office had control and supervision of these cars (R. p. 34, cause No. 23342). Empty cars are stored at Osage, Osage county, Okla., and Parsons by the railroad company when congestion occurs; they are subject to order and return to Cleveland when needed. The need is communicated to the railroad each day (R. p. 35, cause No. 23342), No tax is paid on these cars in Oklahoma, and no ad valorem tax is paid upon them in Illinois (R. p. 4, cause No. 23342).

Section 9574, C. O. S. 1921 [O. S. 1931, sec. 12317], provides:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers except such as is exempt, shall be subject to taxation."

A lawful tax upon this property is dependent upon whether it has a situs for taxation at the time when and the place where the levy is sought to be made.

The corporation resists the tax in whole, asserting the situs for taxation is not within this state; that despite the fact it listed for taxation in Pawnee county 64 cars during one of the years, it is not estopped to deny taxation in toto. It asserts that the cars were but temporarily at Cleveland as an incident to its interstate commerce. However, we find that the absence of the cars from Cleveland is but an incident to the conduct of its business. The corporation possesses but one refinery. It is located at Cleveland. In our opinion the taxable situs is there. Travis v. Dicky, 96 Okla. 256, 222 P. 527; State v. Timbrook's Est. (Mo. App.) 129 S. W. 1068. When this property is away from that point it is in transit, but its destination is always Cleveland, Pawnee county, Okla. So this property has acquired a definite situs which takes it out of the general rule that personal property has its taxable situs at the domicile of the owner. Gulf Ref. Co. v. Tillinghast (La.) 94 So. 418, 26 R. C. L. 273. Within the terms of the statute these cars constitute "property within this state." They are merely temporarily absent at times from the Cleveland refinery, and then in transit for the delivery of products at various points. The entire number of tank cars are taxable in Pawnee county. Prairie Cattle Co. v. Williamson. 5 Okla. 488, 49 P. 937.

The judgments of the county court are affirmed.

There is no law authorizing a tax based upon an "average number" of cars present on a given day at any one taxable point, and there was no application of that principle by administrative officers.

The judgment of the district court is

erroneous as a matter of law. It is reversed, with directions to render judgment directing a listing for taxation of the entire number of the tank cars that have their base for operations within Pawnee county for the years involved.

There is another case herewith presented and considered on oral argument. It comes from Osage county and is styled and numbered, "In the Matter of Assessment of Omitted Property of Johnson Oil Refg. Co., No. 23334." Therein Osage county is claiming the right to collect taxes upon 50 of the cars already considered. The judgment therein was based upon an "average number theory" and predicated upon the presence of that number of these cars upon the railway siding in possession of the railroad, subject to call from the refinery at Cleveland. In our opinion these cars did not have a permanent abiding place within Osage county and were not subject to taxation elsewhere than in Pawnee county.

The judgment in that cause is reversed, with directions to dismiss the action.

CLARK, C. J., and HEFNER, CULLISON, SWINDALL, McNEILL, and KORNEGAY, JJ., concur.

LESTER, C. J., and ANDREWS, J., absent.

---

On Rehearing.

SWINDALL, J. (dissenting). An opinion was rendered in these consolidated causes by this court on the 20th day of December, 1932, with which I cannot agree.

The Johnson Oil Refining Company is a corporation organized under the laws of the state of Illinois, engaging in the business of refining and selling petroleum products. To facilitate its business it maintains and operates a fleet of approximately 381 railroad oil tank cars. By the use of them the Johnson Oil Refining Company transports refined products from its refinery at Cleveland, Pawnee county, Okla., to various points within and without this state. Sometimes the company purchases for resale products from other refineries, and in that event the cars are shunted elsewhere for that purpose. These cars are marked "Johnson Oil Refining Company, Cleveland, Oklahoma," and "When empty return to Johnson Oil Refining Company, Cleveland, Oklahoma." The empty cars are, unless diverted by special order as aforesaid, returned to Cleveland. Repair trackage is maintained at Cleveland which accommodates from 12 to 15 cars, and at that point alone are located replacements and material for repair of

these cars. Other trackage at Cleveland accommodates 65 cars. The refinery loads from 35 to 40 cars per day. The cars upon return remain upon the tracks from 24 hours to 10 days, depending on demand. Throughout the year the company has an average of approximately 64 cars per day at Cleveland, Pawnee county, Okla., and an average of approximately 50 cars per day at Osage, Osage county, Okla., where incoming and outgoing cars are held by the railroad company when congestion occurs at the refinery and when economical railroading requires. The remainder of the 381 cars are outside the state of Oklahoma in various other states. The cars move in 16 states. This company maintains an office in Chicago, where its officers having ultimate executive control reside. But no trackage for cars is maintained in Chicago. Cleveland is the one place where the company always has use for these cars. All of the cars are allocated to the refinery at Cleveland, although movements of the cars in the delivery of products are the result of sales contracts made from the office in Chicago, Ill. The superintendent of transportation for the refinery lives in Cleveland, and that office has control and supervision over the cars. No tax is paid on these cars in Oklahoma. A capital stock tax is paid in Illinois and they are taxed as personal property in several of the states in which they travel.

Upon these facts, the opinion delivered in the causes held: First, that none of the cars were taxable in Osage county, Okla., and, second, that the entire fleet of 381 cars was taxable in the state of Oklahoma in Pawnee county on the theory that all of them had their situs at that place in this state. It is from this latter proposition that I dissent. The tax sustained by the opinion is clearly a direct tax upon tangible personal property, a large proportion of which is constantly outside the state of Oklahoma, although the specific items of property making up the whole are regularly in and out of the state. It is my opinion that a tax so laid is a violation of the 14th Amendment to the Constitution of the United States, that the state of Oklahoma is taxing property outside its jurisdiction.

Mobilia sequuntur personam was a well-established maxim of the common law, and the situs of personal property of every description, wherever it was actually kept or located, was held to be at the domicile of the owner and the property was subject to the jurisdiction of the owner's sovereign. 26 R. C. L. p. 273-4, citing St. Louis v. Wiggins Ferry Co., 11 Wall. 423, 20 U. S. (L. Ed.) 192, and Sangamon, etc., R. Co.

v. Morgan County, 14 Ill. 163, 56 Am. Dec. 497. It is said that this doctrine grew up when most personal property was of a nature which was kept close to the person of the owner, was small in amount, and was seldom removed from one jurisdiction to another without the removal also of its owner. In recent times, with the growth of modern industry and transportation, an extraordinarily large body of tangible and intangible personal property has arisen, which has its location and ownership entirely independent of the domicile of the owner. In response to this situation the doctrine of location for taxation of personal property has changed.

One of the earlier cases noting the weakness in the fiction mobilia sequuntur personam and pointing to actual situs as the proper place for taxation was People ex rel. Hoyt v. Commissioners of Taxes, 23 N. Y. 224. In that case the court said:

"It is said, however, that personal estate by a fiction of law has no situs away from the person or residence of the owner, and is always deemed to be present with him at the place of his domicile. The right to tax the relator's property situated in New Orleans and New Jersey rests upon the universal application of this legal fiction; and it is accordingly insisted upon as an absolute rule or principle of law which, to all intents and purposes, transfers the property from the foreign to the domestic jurisdiction, and thus subjects it to taxation under our laws. Let us observe to what results such a theory will lead us. The necessary consequence is, that goods and chattels actually within this state are not here in any legal sense, or for any legal purpose, if the owner resides abroad. They cannot be taxed here, because they are with the owner who is a citizen or subject of some foreign State. * * *

"Accordingly there seems to be no place for the fiction of which we are speaking, in a well adjusted system of taxation. In such a system a fundamental requisite is that it be harmonious. But harmony does not exist unless the taxing power is exerted with reference exclusively either to the situs of the property, or to the residence of the owner. Both rules cannot obtain unless we impute inconsistency to the law, and oppression to the taxing power. Whichever of these rules is the true one, whichever we find to be founded in justice and in the reason of the thing, it necessarily excludes the other; because we ought to suppose, indeed, we are bound to assume, that other states and governments have adopted the same rule."

The law in this country seems to have developed consonant with the thought contained in that opinion. The Supreme Court of the United States has definitely and unequivocally established the principle that tangible personal property is taxable at its actual situs. Delaware, L. & W. R. Co. v. Pennsylvania, 198 U. S. 341, 49 L. Ed. 1077, and cases cited post. See, also, Prairie Cattle Co. v. Williamson, 5 Okla. 488, 49 P. 937. It holds to the view that taxation by a state of such property having a situs outside its boundaries is a violation of the 14th Amendment to the Constitution of the United States. Union Refrigerator Transit Co. v. Kentucky, 199 U. S. 195, 50 L. Ed. 150. On the other hand, in the field of intangible property, the law in most cases, depending upon the circumstances, still holds to the doctrine that such property is taxable at the domicile of the owner In the Union Refrigerator Transit Co. v. Kentucky Case, supra, Mr. Justice Brown, delivering the opinion of the court, said:

"Respecting this, there is an obvious distinction between tangible and intangible property, in the fact that the latter is held secretly; that there is no method by which its existence or ownership can be ascertained in the state of its situs except, perhaps, in the case of mortgages or shares of stock. So if the owner be discovered, there is no way by which he can be reached by process in a state other than that of his domicile, or the collection of the tax otherwise enforced. In this class of cases the tendency of modern authorities is to apply the maxim mobilia sequuntur personam, and to hold that the property may be taxed at the domicile of the owner as the real situs of the debt, and also, more particularly in the case of mortgages, in the state where the property is retained. Such have been the repeated rulings of this court. (Citations.)

"If this occasionally results in double taxation, it much oftener happens that this class of property escapes altogether. In the case of intangible property, the law does not look for absolute equality, but to the much more practical consideration of collecting the tax upon such property, either in the state of the domicile or the situs. * * *."

See 26 R. C. L. p. 282; Notes. 56 Am. Dec. 527, L. R A 1915C, 914.

The property involved in the case at bar is tangible personalty and would ordinarily fall under the rule which taxes such property at its situs irrespective of the domicile of the owner. However, a prerequisite to the taxation of such property at its situs is that it have a situs. and this property is of a class which in its nature is mobile. and may, therefore. move from place to place with such rapidity that it is extremely difficult to assign to it a definite location. While the sovereign has certain jurisdiction over every chattel situated within its territory, not every chattel which happens

to be so situated can be regarded as having a taxable situs there. A chattel merely temporarily within the limits is not subject to the ordinary property tax. It must have become identified with the jurisdiction as a part of its property. See Commonwealth v. Union Pac. R. Co., 214 Ky. 339, 283 S. W. 119, 49 A. L. R. 1091; Kelley v. Rhoads, 188 U. S. 1, 47 L. Ed. 359, 23 Sup. Ct. Rep. 259; Robinson v. Longley, 18 Nev. 71, 1 P. 377; Brown v. Houston, 114 U. S. 622, 29 L. Ed. 257, 5 Sup. Ct. Rep. 1091; Coe v. Errol, 116 U. S. 517, 29 L. Ed. 715, 6 Sup. Ct. Rep. 475; and the cases regarding vessels cited post.

The Supreme Court of the United States has dealt with the problem of jurisdiction to tax this type of property a number of times, and a review of some of the decisions sheds much light upon the solution. We are, of course, bound in the present case by its decisions.

In dealing with property of this sort that court has sanctioned the taxation of the fixed value of such property continuously within the state during the taxing period by any method which fairly arrives at that value, although the individual units thereof are constantly changing, and are not, as such, identified with the jurisdiction. In Union Tank Line Co. v. Wright (1919) 249 U. S. 275, 63 L. Ed. 602, the court, in considering the proper measure of value for taxation of railway tank cars used in and out of a nondomiciliary state, said:

"A state may not tax property belonging to a foreign corporation which has never come within its borders; to do so under any formula would violate the due process clause of the 14th Amendment. In so far, however, as movables are regularly and habitually used and employed therein, they may be taxed by the state according to their fair value, along with other property subject to its jurisdiction, although devoted to interstate commerce. While the valuation must be just, it need not be limited to mere worth of the articles considered separately, but may include as well 'the tangible value due to what we have called the organic relation of the property in the state to the whole system.' How to appraise them fairly when the tangibles constitute a part of a going concern operating in many states often presents grave difficulties; and absolute accuracy is generally impossible. We have accordingly sustained methods of appraisement producing results approximately correct—for example, the mileage basis in case of a telegraph company (Western U. Teleg. Co. v. Atty. Gen. (1888) 125 U. S. 530, 31 L. Ed. 790, 8 Sup. Ct. Rep. 961), and the average amount of property habitually brought in and carried out by a car company (American Refrigerator Transit Co. v. Hall [1899, 174 U. S. 70, 43 L. Ed. 899, 19 Sup. Ct. Rep. 599]. But if the plan pursued is arbitrary, and the consequent valuation grossly excessive, it must be condemned because of conflict with the commerce clause or the 14th Amendment, or both. Western U. Teleg. Co. v. Atty. Gen., 125 U. S. 530, 31 L. Ed. 790, 8 Sup. Ct. Rep. 961; Marye v. Baltimore & O. R. Co., 127 U. S. 117, 32 L. Ed. 94, 8 Sup. Ct. Rep. 1037; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18, 26, 35 L. Ed. 613, 617, 3 Inters. Com. Rep. 595, 11 Sup. Ct. Rep. 876; Adams Exp. Co. v. Ohio State Auditor, 165 U. S. 194, 41 L. Ed. 683, 17 Sup. Ct. Rep. 305, Id., 166 U. S. 185, 41 L. Ed. 965, 17 Sup. Ct. Rep. 604; American Refrigerator Transit Co. v. Hall, 174 U. S. 70, 43 L. Ed. 899, 19 Sup. Ct. Rep. 599; Union Refrigerator Transit Co. v. Lynch, 177 U. S. 149, 44 L. Ed. 708, 20 Sup. Ct. Rep. 631; Fargo v. Hart, 193 U. S. 490, 48 L. Ed. 761, 24 Sup. Ct. Rep. 498; Cudahy Packing Co. v. Minnesota, 246 U. S. 450, 453, 62 L. Ed. 827, 829, 38 Sup. Ct Rep. 373."

Two of the cases cited above, American Refrigerator Transit Co. v. Hall (1899) and Union Refrigerator Transit Co. v. Lynch (1900), consider specifically the taxation of cars similar to those involved in the present case by a nondomiciliary state. In these cases the facts are essentially the same. In each the owner was engaged in supplying cars to shippers wherever needed; the cars were not confined to any particular route; were run indiscriminately over the lines of railroad over which consignors of freight shipped in such cars choose to route them; had no regular intervals nor any regular number; were engaged solely in interstate commerce; and when in the state were only transiently present. The average number within the state during the taxing period in the Lynch Case was ten cars per day. That case relied heavily upon the authority of the Hall Case, in which the court said:

"It having been settled, as we have seen, that where a corporation of one state brings into another, to use and employ, a portion of its movable personal property, it is legitimate for the latter to impose upon such property, thus used and employed, its fair share of the burdens of taxation imposed upon similar property used in like way by its own citizens, we think that such a tax may be properly assessed and collected, in cases like the present, where the specific and individual items of property so used and employed were not continuously the same, but were constantly changing according to the exigencies of the business, and that the tax may be fixed by an appraisement and valuation of the average amount of the property thus habitually used and employed. Nor would the fact that such cars were employed as vehicles of transportation in the

interchange of interstate commerce render their taxation invalid." Marye v. Baltimore & O. R. R. Co., 127 U. S. 123; Pullman's Palace Car Co. v. Pennsylvania, 141 U. S. 18.

The same question was presented in Germania Refining Co. v. Fuller, 245 U. S. 632, 62 L. Ed. 521 (184 Mich. 618) wherein the cars were oil tank cars and the court affirmed the case by memorandum opinion upon the authority of the two cases, supra. See, also, Prairie Cattle Co. v. Williamson, supra, where the Oklahoma territorial court sustained a tax on the average theory.

After the decisions in these two cases, the question of the power of the domiciliary state to tax the same character of property was presented in the case of Union Refrigerator Transit Co. v. Kentucky (1905) 199 U. S. 195, 50 L. Ed. 150. In that case the cars were employed by the company by renting them to shippers, who took possession of them from time to time at Milwaukee, Wis., and used them for the carriage of freight in the United States, Canada, and Mexico. The domiciliary state, Kentucky, taxed the entire fleet of 2,000 cars for the years 1897, 1898, 1899, and 1900. During those years the average number of cars used in Kentucky per day was 28, 29, 40, and 67, respectively. The court treated the tax as one upon "tangible personal property permanently located in other states," and held the same invalid on the ground that the domiciliary state had no power to tax such property. The opinion indicated, however, that Kentucky could have taxed the average used within its borders. It said:

"We are of opinion that the cars in question, so far as they were located and employed in other states than Kentucky, were not subject to the taxing power of that commonwealth, and that the judgment of the Court of Appeals must be reversed, and the case remanded to that court for further proceedings not inconsistent with this opinion."

No intimation was made, or needed, with respect to where the excess cars were taxable.

Following this case, within less than a year the court again passed upon the power of the domiciliary state in the case of New York C. & H. R. R. Co. v. Miller (1906) 202 U. S. 584, 50 L. Ed. 1155. There the state of New York taxed all of the rolling stock of a railroad company although a considerable proportion of it was constantly outside the limits of the state. The relator contended that the proportion constantly outside should be deducted from the New York tax. No showing was made that any specific items were used continuously and exclusively outside of the state during the whole tax year; the court specifically assumed that none were. The court referred to the cases limiting the power of the domiciliary state to tax, including Union Refrigerator Transit Co. v. Kentucky, supra, then said:

, "But it has not been decided, and it could not be decided, that a state may not tax its own corporations for all their property within the state during the tax year, even if every item of that property should be taken successively into another state for a day, a week, or six months, and then brought back."

Again, in answer to the contention that the present case was but the complement of those cases holding such property taxable in nondomiciliary statutes, the court said:

"In the present case however, it does not appear that any specific cars of any average of cars was so continuously in any other state as to be taxable there. The absences relied on were not in the course of travel upon fixed routes, but random excursions of casually chosen cars, determined by the varying orders of particular shippers and the arbitrary convenience of other roads."

A consideration of these cases, together with the history of the law on this subject, elucidates some of the principles governing the decisions. When the industrial revolution increased enormously the body of tangible and intangible personal property, the maxim mobilia sequuntur personam was already established and the courts followed it until the necessity of taxing personalty at its actual situs became obvious. They then departed from the maxim in favor of the situs, but for the latter to apply the property must have become identified with a jurisdiction other than that of its owner. There remained a class of property for which no situs could be definitely defined. A strong feeling has constantly obtained that no thing of value should escape taxation altogether. So in such cases, the courts have retained the domiciliary theory. This, it seems, should alleviate the necessity of a court seeking out the most definite of several elusive possible situses and oblige it to uphold a tax only when the property has a defined situs within the taxing jurisdiction. Complementary action of other states should equalize the burdens. Property difficult of location has frequently been held taxable in two states. While the courts have not exhibited squeamishness at this situation, they have, nevertheless, tried on the whole to develop a harmonious system. With respect to property similar to that involved herein, Mr. Justice Lurton, in Southern P. Co. v. Kentucky, 222 U. S. 63, 56

L. Ed. 96, expressed the feeling of difficulty of taxing at the situs as follows:

"To lay down a principle that vessel property has no situs for purposes of taxation other than that of actual permanent location would introduce elements of uncertainty concerning the situs of such property not presented by other kinds of movable property."

Such a principle would lead to conflicts in taxation between states and disrupt the harmony of the taxing system as a whole. Unfortunate individuals engaged in legitimate trade between states would suffer hardship. Under certain circumstances the courts have applied the theory of fixed value with changing identity. The items of property do not have a situs within the state, but the fixed value is always present. In fairness to that state it should be taxable. Yet, it would be a violation of the very principle upon which the theory is set if the state were allowed to tax a greater amount than the value existing within its borders or to tax where no fixed value really exists. It seems that the minimum should be where there is sufficient average continuously used within the state so that it may be said that the average value is identified with the jurisdiction and the maximum should include only that value. Random excursions of cars into a state in insufficient quantity or with insufficient continuity to create a fixed value identified with the jurisdiction should not justify a tax. In harmony with the feeling that all property should be taxed somewhere, such property should be taxed at the domicile of the owner. See New York C. & H. R. R. Co. v. Miller, supra.

In the present case I have no doubt that the average value of the property used in this state is taxable herein. On the other hand, it seems clear that under the decisions cited above much of this property was properly taxable in states other than Oklahoma and another part of it probably had no such definite location as to be taxable at its situs at all. If Oklahoma sustains a tax upon all of the property, it has violated the interests of harmony in the taxation of such property. The same is true even if we hold that each item of property has an actual situs in this state, though I do not say that it would not then all be taxable here. But, I do feel that such consideration should make us reluctant to find that situs. Again, with respect to such part as perhaps has no taxable average elsewhere, we should not try to import a situs by any forced conceptions, on the theory that the most definite situs is in this state, but should yield to the domiciliary jurisdiction.

It is my opinion that each unit of the property involved in this case, that is, each tank car, cannot upon analysis be held to have an actual situs in the state of Oklahoma. Each car came into and went out of the state during the taxing period. It stayed at the refinery from 24 hours to 10 days each trip. And there were always a greater number out of the state than in its boundaries, so each car must have remained outside the state considerably longer than it did inside. The fact that the cars were used to transport the products of the refinery at Cleveland, that all other points to which they went were haphazard, that they were returnable when empty to Cleveland, that the company repaired them there and maintained storage tracks for them at that place, and that they were always in demand at Cleveland only, does not seem to me sufficient to establish their situs in toto in Oklahoma. These facts are but evidentiary of the essential factor—that each car is as a whole identified with this jurisdiction. There remains the company's purpose to, and the fact that it did, use these cars widely in interstate commerce, that the cars were in fact employed more out of the state than in it. Purpose coupled with action seems to be the controlling principle in assigning a situs to chattels. See Delaware, L. & W. R. Co. v. Pennsylvania, Kelley v. Rhoads, Robinson v. Longley, Brown v. Houston, and Coe v. Errol, all cited, supra.

Some of the cases most closely in point in the present situation are the cases decided in the Supreme Court of the United States concerning the situs for taxation of vessels. In the case of Hays v. Pacific Mail S. S. Co. (1855) 17 How. 596, 15 L. Ed. 254, California laid a tax upon ocean going vessels. They were owned by a New York corporation and operated by way of Panama to San Francisco, Cal., and points in the Territory of Oregon. The ships operated on schedule and were in each port long enough to transact their business there. After discharging at San Francisco they proceeded to Benicia, Cal., where the company maintained a naval dock and a shipyard for its ships to put in, when not otherwise engaged, for repairs, and to await the commencement of the next voyage, usually ten or twelve days. The court held that these ships had no situs for taxation in California.

In Morgan v. Parham (1873) 16 Wall. 471, 21 L. Ed. 303, the vessel operated on a schedule between Mobile, Ala., and New Orleans, La., touching each port about three days per week. The ship was owned by a

resident of New York and was registered in that state. The captain resided in Mobile and a superior agent resided in New Orleans. The ship never went into other waters. The court held the ship, together with others in the same situation, had no situs for taxation in Alabama, and said that such situs was in New York.

In 1905, in Old Dominion S. S. Co. v. Virginia, 198 U. S. 299, 49 L. Ed. 1059, the court held that a ship on navigable waters operating wholly within the state of Virginia, but engaged in interstate commerce, had a situs for taxation in that state.

In 1906 it decided Ayer & Lord Tie Co. v. Kentucky, 202 U. S. 409, 50 L. Ed. 1082, wherein vessels and barges operated on inland waters. They were owned in Illinois, had "Paducah, Kentucky" painted on their stern, and when not in use were kept in Paducah. The court held that they had no situs for taxation in Kentucky.

When one compares these cases with the facts in the case at bar, it seems to me that we cannot escape the conclusion that each of these cars used into and out of the state of Oklahoma did not have its taxable situs in this state.

For the foregoing reasons, I am of the opinion that the state of Oklahoma had no jurisdiction to tax the entire number of 381 cars owned by the Johnson Oil Refining Company, and that a tax so assessed is a violation of the 14th Amendment of the Constitution of the United States. I, therefore, most respectfully dissent.