### SHAFFER OIL & REFINING CO. v. COUNTY TREASURER OF CREEK COUNTY.

No. 21037. Nov. 26, 1935.

G. Earl Shaffer, Fred D. Leonard, W. F. Semple, and Rainey, Flynn, Green & Anderson, for plaintiff in error.

W. F. Pardoe, Leroy J. Burt, J. Berry King, Atty. Gen., and F. M. Dudley, Asst. Atty. Gen., for defendants in error.

BUSBY, J. This case involves an effort on the part of the tax ferret of Creek county to list and assess for taxation certain alleged omitted personal property belonging to the Shaffer Oil & Refining Company.

The property involved is located in section 33, township 17 north, range 7 east, and is described as "1-4 Unit vacuum plant complete, located in 33-17-7, Shannon township S. D. 56, as evidenced by the county assessor's rolls, Creek county. This includes all vacuum lines leading to wells and also all vacuum lines leading from vacuum plant in 33-17-7 to Chapman Gasoline Plant in 4-16-7."

Following the procedure prescribed by sections 12346 and 12348, O. S. 1931, this matter was first considered by the county treasurer and later on appeal by the county court. Both the treasurer and the county court decided that the property involved was subject to ad valorem taxation for the years 1919 to 1928, inclusive, and that the property had not been listed and assessed for those years.

The property owner brings the case to this court on appeal complaining in substance, first, that the property was not subject to ad valorem taxation during the years mentioned because it was actually used in the production of oil and gas and therefore excluded from the class of property subject to ad valorem taxation by payment of the gross production tax; and, second, that the property was not in fact "omitted property," but on the contrary had been listed and assessed for ad valorem taxes for each of the years mentioned and the taxes thereon paid. In other words, the property owner urges that it gratuitously paid ad valorem taxes on this property which in reality it could not have been compelled to pay as a matter of law.

We shall first examine the case for the purpose of determining whether the property involved was listed and assessed for ad valorem taxes during the period of time involved.

The property owner owns and operates a casinghead gasoline plant in the southwest quarter of section 4, township 16 north, range 7 east, which is something more than one mile distant from the so-called "vacuum plant" now sought to be taxed. During each of the years mentioned the property owner filed a tax return with the county assessor. The returns were substantially the same, and it is therefore sufficient to quote only one, which reads:

"Assessment Return January 1, 1920, Shaffer Oil and Refining Company's Physical Property in Creek County, Oklahoma, for Manufacturing Casinghead Gasoline.

"Shannon Township School District No. 56

"J. A. Chapman farm situated in southwest quarter of section 4-16N-7E.

"1 Casinghead gasoline plant consisting of four units listed below, together with necessary equipment for operating of same:

"4 Bessemer units consisting of four high stage compressors $7\frac{1}{4} \times 20$ and four low stage compressors $14 \times 20$ driven by 80 HP Bessemer engines (age 2 yrs)"

The property owner contends that the words **"Together with necessary equipment for operating of same"** are broad and general and include the vacuum plant. This contention is disputed by the face of the returns. An examination thereof discloses that the only property purported to be returned for taxation is that located on the Chapman farm situated in southwest quarter of section 4, township 16 north, range 7 east. The vacuum plant, even though it be considered a part of the gasoline plant, is not located on the Chapman farm, but is a mile away. The general catch-all phrase relied on by the taxpayer is by the terms of the return restricted to the "necessary equipment" located at the place designated.

The returns alone amply support the finding of the trial court that the vacuum plant was not included therein and was not listed and assessed for ad valorem taxation during the years mentioned. Other evidence touching upon this point need not be reviewed. We decline to disturb the finding of the trial court on this disputed question.

We shall next review the contention of the property owner that the property involved was excused from the payment of ad valorem taxes by reason of the payment of gross production tax.

By the terms of our statutes gross production tax is in lieu of ad valorem tax on certain designated property. Section 12434, O. S. 1931, provides in part:

"The payment of the taxes herein imposed shall be in full and in lieu of all taxes by the state, counties, cities, towns, townships, school districts and other municipalities upon any property rights attached to or inherent in the right to said minerals, upon leases * * * for petroleum or other crude oil or other mineral oil, or for natural gas upon the mineral rights and privileges for the minerals aforesaid belonging or appertaining to land, upon the machinery, appliances and equipment used in and around any well producing petroleum or other crude or mineral oil or natural gas, * * * and actually used in the operation of such well or mine; and also upon the oil, gas, asphalt or ores bearing minerals hereinbefore mentioned during the tax year in which the same is produced, and upon any investment in any of the leases, rights, privileges, minerals, or property hereinbefore in this paragraph mentioned or described. * * *" (The above statute amended by section 5, chap. 103, S. L. 1933, with which amendment we are not concerned in this action.)

Under the foregoing legislative enactment, machinery, appliances, and equipment used **in and around** any oil or gas well and **actually used** in the operation of such well are excused from the payment of ad valorem taxes by virtue of the payment of gross production tax. Kenoyer v. Board of Equalization of Ottawa County, 130 Okla. 3, 264 P. 891; Josey Oil Co. v. Board of Commissioners, 107 Okla. 266, 231 P. 272. The property thus used need not be immediately adjacent to a producing well or wells, the principal test being the character of its actual use. In re Assessment of Omitted Property of Prairie Oil & Gas Co., 159 Okla. 181, 13 P. (2d) 580.

In the case of Going, County Treas., v. Shaffer, 89 Okla. 46, 213 P. 736, and the subsequent case of Board of Equalization of Carter County v. Carter Oil Co., 152 Okla. 99, 3 P. (2d) 816, it is stated in substance that in order for equipment to be exempt from ad valorem taxation, it must be an **indispensable agency** in the production of oil. The use of the word "indispensable" in those cases was unfortunate, since by implication it indicates that if the use of the particular equipment could be dispensed with, it is subject to ad valorem taxation, notwithstanding the payment of gross production tax. A great deal of property used in connection with the production of oil could be eliminated and production accomplished without its use. Such property, though actually used in producing oil, is in a strict sense dispensable. Its actual use under the terms of the statute (section 12434) excludes it from the mass of property subject to the burden of ad valorem taxation, notwithstanding its dispensable character.

In order that future confusion may be avoided, the language used in the two cases last above cited is modified to the extent that machinery, appliances, and equipment actually used in the production of oil in and around an oil well may be relieved of ad valorem taxation even though in a strict sense such property is a dispensable agency.

We now turn our attention to the property involved in this case for the purpose of determining whether it was actually used in and around an oil well in the production of oil or gas.

From the testimony of the witnesses it appears that the "vacuum plant" involved in this case performs two distinct functions. It is located in close proximity to a number of producing oil and gas wells. It is connected with each of these wells by pipes and serves to promote and increase the production of oil and gas from the wells. It also performs the additional function of transferring the gas into lines leading to the gasoline plant belonging to the property owner and "boosting" it toward the plant through such lines.

In the performance of the first function the property is being actually used in the production of oil and gas; in the performance of the second its use is connected with the transportation of gas as distinguished from the production thereof. If the property were exclusively engaged in either of the uses above mentioned, its taxable status could be easily ascertained. Neither would the question be extremely difficult if the different component elements of the "vacuum plant itself" could be definitely classified as to use, that is, if certain portions perform functions exclusively connected with the production of oil or gas, while other portions perform functions exclusively connected with the transportation of oil or gas. The record does not reflect that such

a classification would be possible except with reference to the pipe lines. Those leading from the wells to the vacuum plant are apparently connected with production, while those leading from the vacuum plant to the gasoline plant are apparently connected with the transportation of gas and the manufacture of gasoline. Thus the first mentioned pipes are excused from ad valorem taxes, while the latter are not.

In view of the record presented to us, we must assume that a classification on the basis of use of the different component elements of the vacuum plant itself is impossible. This assumption is made without prejudice to the right of the parties to demonstrate in the future proceedings in this case the possibility of such a classification.

In deciding this case the trial court evidently determined as a matter of fact that the **principal use** of the vacuum plant was the transportation of gas and the manufacture of gasoline and concluded as a matter of law that the principal use of the property should govern in fixing its taxable status. Accordingly the entire property was held to be subject to ad valorem taxes.

After a careful examination of the evidence we are unable to say that the finding of the trial court is against the clear weight thereof, although the weight of the evidence on this point is somewhat difficult to determine due to the disposition of some of the witnesses to state their conclusions with reference to the principal use of the plant, rather than detail the facts from which the court could draw a conclusion. Another source of confusion appears to have been the somewhat inconsistent position taken by the property owner, which in one breath attempted to establish that the vacuum plant was merely a portion of the equipment of the gasoline plant designed for the manufacture of gasoline and included in the ad valorem assessment of the gasoline plant, and in the next breath undertook to prove that the vacuum plant was equipment in and around oil wells used for the production of oil and not associated with the transportation of gas or manufacture of gasoline.

While we refuse to disturb the finding of the trial court on the question of fact, we are unable to agree that the result announced is correct.

The taxable status of the property must be determined by its use, but the property is devoted to two uses, one of which, if exclusive, would subject it to ad valorem taxation; the other, if exclusive, would excuse it from that burden. Should the property be excused entirely from ad valorem taxation because it is used in part for the production of oil? Should it be excused because its principal use is the production of oil and gas? Should it be held subject to ad valorem taxation as a whole because it is not exclusively used in the production of oil?

A judicial affirmative answer to either of the foregoing questions would be subject to grave objections, and would afford an avenue for inexcusable and unfair results in apportioning the governmental burden of taxation. To say that property is not subject to ad valorem taxation if it is partly used (no matter how small the partial use may be) for the production of oil or gas, would permit a large mass of property devoted to a dual use to escape its just proportionate share of a burden which should be imposed with an "equal eye and an even hand." To say that in order to avoid the burdens of ad valorem taxes property must be exclusively used in the production of oil or gas would impose upon property only partly used for that purpose a disproportionate and unfair burden, since it would bear a share of the burden through both gross production and ad valorem taxes. Though perhaps free from strictly legal objections, such a result is equitably unsound and a result which should be frowned upon by the law. On the other hand, if the principal use of property should determine its taxable status, each decision upon the status of particular property devoted to a dual use would embody a measure of injustice to the state or the property owner. If 49 per cent. of the use of property used for two purposes were devoted to the production of oil and gas, the entire property would be taxable on an ad valorem basis. The property owner would act at his peril in determining the principal use of his property, and in later years might be put to the hazard of proving the soundness of his judgment in deciding its principal use with the possible penalty of paying ad valorem taxes for years past on the entire property devoted to a dual use, if a trial court should not approve his judgment on a disputed question of fact determining the principal use. Similarly the state and taxing authorities would in all cases of dispute be faced with the difficult task of establishing the principal use

of property, revealing facts peculiarly within the knowledge of the taxpayer. The difficulty of proof in this respect would encourage operators to assert the nontaxability of such property in all doubtful cases, thereby producing chaos and confusion in the practical administration of the tax laws.

The foregoing considerations impel us to the view that when property is devoted to two uses, one of which, if exclusive, would excuse it from the payment of ad valorem taxes under the gross production tax law, the other of which, if exclusive, would subject it to ad valorem taxes, and where the different component parts of such property are incapable of classification according to exclusive use, the taxable status of such property should be determined on a pro rata basis according to use and the proportionate part of the property that is devoted to a use not connected with the production of oil or gas should be listed and assessed for ad valorem taxation, and the value of the property should be allocated accordingly.

We realize that this view is not free from difficulties in practical administration, but we believe it presents no greater difficulty than would be presented by the administration of any other rule. Furthermore and of paramount importance, it commends itself on principles of equity and justice.

While no specific statute exists to form the basis of our view, it corresponds to the general theory of the tax law and is by analogy supported by judicial precedent in this and other jurisdictions.

Section 8 of art. 10 of the Constitution provides:

"All property which may be taxed ad valorem shall be assessed for taxation at its fair cash value, estimated at the price it would bring at a fair voluntary sale; and any officer, or other person authorized to assess values, or subjects, for taxation, who shall commit any willful error in the performance of his duty, shall be deemed guilty of malfeasance, and upon conviction thereof shall forfeit his office, and be otherwise punished as may be provided by law."

Section 50 of art. 5 of the state Constitution provides:

"The Legislature shall pass no law exempting any property withis (within) this state from taxation, except as otherwise provided in this Constitution."

Section 12317, O. S. 1931, provides in part:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers, except such as is exempt, shall be subject to taxation. * * *"

Section 12318, O. S. 1931, contains the following provision:

"All property in this state, whether real or personal, including the property of corporations, banks and bankers, * * * except such as is exempt, shall be subject to taxation. * * *"

And section 12581, O. S. 1931, provides in part:

"All taxable property shall be listed and assessed each year at its fair cash value, estimated at the price it would bring at a fair voluntary sale, in the name of the owner thereof on the first day of January of each year, as soon as practicable on or after the fifteenth day of January, including all property owned on the first day of January of that year. * * *"

The gross production tax is in lieu of ad valorem taxes on certain designated property, but it was not intended as an exemption statute and it should not be construed so that in practical operation it becomes an exemption statute as to a portion of property devoted to a dual use.

Tax exemptions are not favored in law, it being the policy of the law that all property should be subjected to the burden of taxation. New York Life Ins. Co. v. Board of Com'rs of Oklahoma County, 155 Okla. 247, 9 P. (2d) 936. This policy has found legislative expression in the previously quoted statutory provisions.

In the case of Johnson Oil Refining Co. v. State of Oklahoma ex rel., 78 L. Ed. 238, the Supreme Court of the United States held that the extent to which the state could go in taxing certain tank cars depended on the number of cars which on the average were within the state. The limits of the power of this state having thus been defined, this court encountered no difficulty in deciding that the tax could be imposed under the law of this state in accord with the limitation and based upon the average number physically present within a county during the year. See In re Johnson Oil Refining Co., 167 Okla. 452, 30 P. (2d) 692. This conclusion was announced notwithstanding the fact that, as we had previously pointed out, there is no specific statute authorizing the tax to be computed on the basis of the "average number" of cars within a taxing jurisdiction. See In re

Johnson Oil Refining Co.'s Property, 162 Okla. 185, 19 P. (2d) 168; see, also, 26 R. C. L. 106.

Similarly it has been held in a number of jurisdictions that a building used for two purposes, one purpose being such that it would be exempt from taxation, if exclusively devoted to that use, the other use being such as to render it taxable, may be divided for the purpose of taxation. 61 C. J. 485, and cases cited in support of the text. We call attention to this rule as supporting the principle of allocation for the purpose of taxation without approving its application of the rule in this jurisdiction to buildings used in part for charitable or religious purposes, since that question is not now before us and involves a consideration of other questions not cognizable in this litigation.

Thus, in view of the general purpose and policy of the tax laws, we conclude that the rule requiring the allocation of value in proportion to use for the purpose of taxing property having dual uses, one of which is connected with the production of oil or gas, is free from legal objection.

In deciding this case in this manner we have based our decision upon a theory not presented by either party in the trial of the case. The general rule is that an appellate court will not review a case on a theory not presented in the trial of the cause in the court below. This rule, however, is not without exceptions, one of which is where the question presented involves public policy or public interest. 3 C. J. 742.

In view of the large amount of property devoted to a dual use in the oil fields and the necessity that the burden of taxation be properly and equitably imposed on such property, the question is clearly one of public interest and falls within the exception noted.

The tax years involved herein occurred before the enactment of chapter 103, S. L. 1933, and what we have said herein concerns the law as it existed prior to the effective date of that act. In this case we cannot properly decide what effect, if any, chapter 103, supra, has upon problems such as are presented by the case at bar.

The judgment of the trial court is reversed, with directions to proceed in accord with the views herein expressed.

McNEILL, C. J., and RILEY, BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur. OSBORN, V. C. J., and WELCH, J., dissent.