**COL–TEX REFINING CO. v. HART et al.**

No. 2099.

Court of Civil Appeals of Texas. Eastland.

Oct. 11, 1940.

Rehearing Denied Nov. 8, 1940.

Ratliff & Worrell, of Colorado City, and Jarman, Brown, Looney & Watts, of Oklahoma City, Okl., for appellant.

B. N. Carter, Co. Atty., of Colorado City, Gerald C. Mann, Atty. Gen., and Cecil C. Rotsch and Billy Goldberg, Asst. Attys. Gen., for appellees.

LESLIE, Chief Justice.

The Col-Tex Refining Company, a private corporation, instituted this suit against Bruce Hart, tax collector and assessor of Mitchell County, and others, seeking an injunction against said officials to restrain them from collecting an intangible tax imposed upon it by virtue of Art. 7105, Vernon's Ann. Civil Statutes, against the pipe line operated by the plaintiff. A trial was had before the court without a jury and resulted in judgment refusing plaintiff the relief prayed for. There are findings of fact and conclusions of law in the record. From the judgment the Refining Company appeals. The parties will be referred to as in the trial court.

According to the undisputed evidence in the case, the plaintiff owns in connection with its refinery about 65 miles of pipe line in Mitchell, Howard and Glasscock Counties. All the oil that passes through said pipe line is first purchased by the plaintiff from producers in the different fields and it is then transported through such lines to said refinery owned and operated by the plaintiff, Col-Tex Refining Company, at Colorado, Texas.

There is only one question for decision in the case, and that is: Does said Art. 7105 apply to the type of pipe line owned and so used by said Refining Company? The pipe line is used exclusively for the transportation of its own oil to its refinery for the purpose of refining the same. The plaintiff contends that it is not subject to the intangible tax for the reason, as asserted by it, that only pipe line companies which operate pipe lines for hire are subject to said tax, whereas, the plaintiff uses its gathering system as a mere facility to its refining business, and does not thereby bring itself within the provisions of said article. On the other hand, the defendants assert that the terms of Art. 7105 apply to pipe lines operated under the same conditions as the one by the Col-Tex Refining Company.

Article 7105 reads as follows: "Each incorporated railroad company, ferry company, bridge company, turnpike or toll company, *oil pipe line company, and all common carrier pipe line companies of every character whatsoever, engaged in the transportation of oil,* doing business wholly or in part within this State, whether incorporated under the laws of this State, or of any other State, territory, or foreign country, *and every other individual, company, corporation or association doing business of the same character in this State,* in addition to the ad valorem taxes on tangible properties which are or may be imposed upon them respectively, by law, shall pay an annual tax to the State, beginning with the first day of January of each year, on their intangible assets and property, and local taxes thereon to the counties in which its business is carried on; which additional tax shall be assessed and levied upon such intangible assets and property in the manner provided in this chapter. The county or counties in which such taxes are to be paid, and the manner of apportionment of the same, shall be determined in accordance with the provisions of this chapter. Acts 1905, p. 35; Acts 1907, 1st C.S., p. 469; Acts 1933, 43rd Leg., p. 409, ch. 162, § 12." (Italics ours.)

It, therefore, becomes necessary to construe the above article in order to determine whether or not the plaintiff's pipe lines making up its gathering system and the use made thereof bring the same within said provision of the statute, subjecting the company to the payment of the intangible tax apportionable to that part of the system lying in Mitchell County itself, as determined by the State Tax Board.

In order to bring the appellant within the terms of Art. 7105 it must be held that it is an (incorporated) "oil pipe line company", or that it is a "common carrier pipe line company" of some character, or that it is "doing business" in this State of the "same character" as one or the other concerns before mentioned. This is obvious from a fair consideration of the italicized parts of said article.

■ The undisputed testimony, as well as the findings of the trial court, establish that the plaintiff is neither an incorporated oil pipe line company, nor a common carrier oil pipe line company, as designated in the statute. It thus becomes material to ascertain whether or not plaintiff is *doing business* in this State of the *same character* as an incorporated oil pipe line company, or a common carrier pipe line company.

A reference to the history of the intangible tax law may be of value at this point. It was originally passed 1905. The law was amended in 1907 and again in 1933. The 1933 amendment inserted for the first time the following words: "oil pipe line company and all common carrier pipe line companies of every character whatsoever, engaged in the transportation of oil." Acts 1933, 43d Leg. p. 409, chap. 162, § 12. Not until that time does it appear that the growing pipe line business engaged in the transportation of oil attracted the attention of the tax raising authorities of this State, especially by the application of the intangible tax. This tax measure (amendatory act of 1933) incorporating in the original intangible tax the language—"oil pipe line company and all common carrier pipe line companies of every character whatsoever, engaged in the transportation of oil"—expressed its legislative intent and purpose in the following provision: "The purpose hereof is to place all common carrier oil pipe line companies under all of the provisions of the Intangible Asset Tax Laws of this State; and, for the purpose of placing under said act all taxpayers similarly situated, and to bring about a better classification and a wider distribution of the burdens of taxation, as far as this class of taxpayers is concerned."

In this language the purpose of the act is clearly expressed. It was designed to extend the terms of the intangible tax measure to a strong and growing class of taxpayers who had theretofore escaped this particular type of tax. This class was made up of (incorporated) "pipe line companies", "common carrier oil pipe line companies of every character whatsoever" and "all taxpayers similarly situated", and in so extending it, it was designed to "bring about a better classification and a wider distribution of the burdens of taxation, as far as this class of taxpayers is concerned."

■ . Naturally a common carrier oil pipe line company would carry on the business of transporting oil by pipe lines as its business and presumptively for hire. It would be a revenue producing concern within itself, and as such would readily fall within the class of taxpayers presumably subject to the intangible tax or sought to be subjected to that tax.

■ Upon the same principle and for the same reasons, an incorporated oil pipe line company would be carrying on the business of transporting oil by pipe line. The business would have as its object a profit or income for the owner, and that would be true whether it was a private or public carrier. The very purpose of its existence and nature of its business at once suggest it was similar in situation (as a subject for taxation) to that of the common carrier pipe line company, and, therefore, a proper subject for the application of the intangible tax measure which the Legislature was seeking to extend to taxpayers "similarly situated." It would, therefore, seem logical not only to bring such companies within the spread of this tax measure, but also to extend the same and distribute its burden to "* * * every other individual, company, corporation or association doing business of the same character in this State." Art. 7105.

The section of the statute just quoted designates a class of persons which would logically fall within the terms of the intangible tax measure as definitely as the first two classes discussed. The provision leaves no doubt as to who would be embraced in its terms. It specifically mentions "every other individual, company, corporation" *doing business* of the *same character,* referring, of course, to incorporated oil pipe line companies and common carrier pipe line companies engaged in the transportation of oil in this State. In the first place, every such "individual, corporation," etc., would have to be engaged in business within the State and that business would have to be of the same character as that being done by the incorporated pipe line company, carrier, etc., that is, engaged in the transportation of oil as a business, and presumptively for hire. Clearly such companies, individuals or corporations doing the same character of business should, in fairness and under the terms of the law, bear a burden of taxation similar to that borne by other taxpayers in the same class. At least, the law-making power must have so thought, and that appears to be a fair interpretation of the statute. However, this interpretation, if correct, would not bring

the plaintiff or its gathering pipe line system within the terms of Art. 7105. Its gathering system of pipe lines is in no respect a common carrier of crude oil. Its gathering system is not within itself a revenue producing business. These pipe lines are merely incidental to the company's business of refining crude oil and strictly limited to that purpose. The Col-Tex Refining Company was incorporated as a refining company, and not as a pipe line company or common carrier pipe line company. As a refining company it did not possess the right of eminent domain and in establishing its gathering system of pipe lines it did not assert or attempt to avail itself of any such privilege or right. In the use it made of its gathering system the refinery in no sense of the word was doing the "same character of business" as that referred to by such language in Art. 7105. Its gathering system was in no sense "similarly situated" to those of the taxpayers above discussed and classified. Hence, we conclude that the plaintiff, by the character and use made of its pipe lines, in no respect brings itself within the terms of said intangible tax measure.

Support for the conclusion that plaintiff's pipe lines do not come within the provision of Art. 7105 may be found in the opinion in Texas Co. v. Stephens et al., 100 Tex. 628, 103 S.W. 481, 487. The Supreme Court was there construing a measure levying a gross receipt tax on certain individuals, firms and corporations. Section 12 thereof reads, in part, as follows: "Every individual, joint stock association, company, copartnership or corporation, whether incorporated under the laws of this state or of any other state, Territory, or of the United States, or of any foreign nation, which owns or operates a pipe line or lines within the State of Texas, whether such pipe lines be used for the transmission of oil, natural or artificial gas whether the same be for illuminating or fuel purposes or for any other purpose, or for steam, for heat or power, or for the transmission of articles by pneumatic or other power, shall be deemed and held to be a pipe line company; and every such pipe line company shall, on or before the first day of April of each and every year, and quarterly thereafter * * * file with the Comptroller a report" etc. Acts 1905, c. 148.

This statute is apparently as broad and liberal in its coverage as Art. 7105. It was contended in the Stephens case, supra, that the act was unconstitutional, lacking uniformity in application, and discriminatory against the Texas Company in favor of persons, firms and corporations owning purely private lines, limited in use to some other business or incidental to the business of the owner. In disposing of such contention the Supreme Court said: "It is easily deduced from all of the provisions together that the taxes levied upon those engaged in the business of transportation by pipe lines for others for hire or profit, and the title of the act re-enforces this idea, in that all of the businesses specified in it are to be conducted for profit. To all such section 12 applies, and the position cannot be maintained that it exempts from the burden imposed any business of the same class; that is, such as are engaged in serving the public for hire. *There is no doubt that those carrying on such businesses may be properly classified for taxation, apart from the owners of different businesses who, as an incident of their businesses, use pipe lines to transport exclusively their own commodities. The plaintiff falls within the class designated in the act, and the fact that owners of private businesses employing pipe lines for their own purposes are not also subjected to the tax raised no constitutional objection.*" (Italics ours.)

Here the Supreme Court held that the Legislature intended to place the tax involved upon those operating pipe lines for hire and as a business. Also, the court must have considered that a purely private pipe line used in a business and as an exclusive incident thereto would not be a pipe line operated for profit as contemplated in the terms of the statute. The same reasoning may well be applied to the facts of the instant case.

There are other convincing reasons for the conclusion that the Col-Tex Refining Company is not an "oil pipe line company" or a corporation doing business of the "same character" within the meaning of Art. 7105, and, therefore, subject to the tax. Some of these reasons follow:

At the time (1933) the words "each * * * oil pipe line company * * * of every character whatsoever, engaged in the transportation of oil" were inserted in the intangible tax law, and Art. 7105 took its present form, Art. 6018, R.C.S.1925, was then a part of our general statutes and had been since 1917. Several classes of taxpayers (railroad company, ferry company,

bridge company, turnpike or toll company) had already been taxed under Art. 7105 in its original form, and by said amendment the transportation of crude oil by pipe line was brought within its provisions. Evidently the Legislature was attempting to bring all persons and corporations transporting oil by pipe line as a business within the provisions of Art. 7105.

At the time of this amendment (1933) the Legislature had already defined common carriers by Art. 6018. Hence, in so amended Art. 7105, it is significant that the Legislature incorporated the words " * * * and all common carrier pipe line companies of every character whatsoever, engaged in the transportation of oil." In four separate sections, Art. 6018 defines common carrier pipe line companies in language rather broad. The Legislature inserted after such definitions the following: "The provisions of this law shall not apply to those pipe lines which are limited in their use to the wells, stations, plants and refineries of the owner and which are not a part of the pipe line transportation system of any common carrier as above defined; nor shall such provisions apply to any property of such a common carrier which is not a part of or necessarily incident to its pipe line transportation system." Acts 1917, ch. 30, pp. 48, 49.

■ This provision in the Act was to make clear that "pipe lines which are limited in their use to the wells * * * and *refineries* of the owner and which are not a part of the pipe line transportation system of any common carrier as above defined" were neither included nor intended to be included in the definition of a common carrier pipe line company. Art. 6018. The insertion was to remove any doubt or chance for misunderstanding on that point.

In this provision there appears the legislative intent to leave in a favored position "those pipe lines which are limited in their use to the * * * refineries of the owner" etc., as well as to recognize that such gathering systems were never included in that statute. Evidently plaintiff's pipe lines would and did challenge the same legislative consideration or treatment.

■ Our conclusions are also supported by the legislative intent as reflected in chapter 15, Title 32, R.S.1925 (Art. 1495 et seq., Vernon's Ann.Civ.St. art. 1495 et seq.), relating to corporations formed or created for the purpose of "storing, transporting, buying and selling oil [and] gas" etc. While prohibiting corporations which own public pipe lines in this State from engaging in the business of producing oil and gas, nevertheless said chapter contains no limitation on the right of such corporations (even though "engaged in the production business") to own and operate its "private pipe lines in and about its refineries, fields or stations." 33 Tex.Jur. p. 376, secs. 1 and 2. Witness the language of the following articles:

"Art. 1499. Such corporation may also engage in the oil and gas producing business, prospecting for and producing oil and gas and owning and holding lands, leases and other property for said purposes and subject to the provisions of Chapter 4 of this title. No corporation shall exercise these powers while owning or operating oil pipe lines in this State."

"Art. 1500. Any corporation heretofor: or hereafter organized under this chapter, and owning or operating oil pipe lines in this State, shall separately incorporate such oil lines, with the consent of a majority in amount of its stockholders and subject to the restrictions hereinafter imposed, whereupon, in addition to the other powers which it may possess, it shall then acquire the right and power to engage in said oil and gas producing business."

Article 1503, to which special attention is directed, is: *"Nothing in this chapter shall preclude the ownership or operation by any corporation, of private pipe lines in and about its refineries, fields or stations, even though such corporation may be engaged in the producing business."* (Italics ours.)

These statutes also reflect a legislative intent or policy toward purely private pipe lines limited to the use of the refinery owning them, and the effect of such policy would seem to be to exempt such private lines from the primary burdens of the particular statute under consideration and a like immunity was doubtless intended for the plaintiff's private pipe lines or gathering system when the intangible tax measure was enacted. This would be a logical conclusion since the language of Art. 7105 makes "doing business of the same character" determinative of what classes shall pay the tax, and since, as pointed out, the function of the plaintiff's gathering system was strictly limited to the refining business as incidental thereto and which produced no revenue within itself and otherwise

failed to come within the terms of Art. 7105.

Further, wherever the question of purely private pipe lines, limited in use to refineries of their owners, have been dealt with by legislation, such pipe lines have been excepted from the operation of the law in its primary purpose and object. In other words, the legislation is specific that such private pipe lines were never included in its terms. Evidently the Legislature had in mind Arts. 6018 and 1503 when it amended Art. 7105. The statutes containing Art. 6018 and Art. 1503 appear to have been enacted the same day and year.

Further, the Legislature has used such particular wording or designation of those classes sought to be taxed by Art. 7105 that the inference naturally arises that it had the purpose and intention of leaving untaxed some character of pipe lines transporting oil. If it did not intend to do so, it could easily have levied the taxes in unmistakable language by assessing it against *every individual, company, corporation or association transporting oil by pipe lines in this State*. However, the statute is not so broad as that, and the intention appears to be to omit from the provisions of the intangible tax law such pipe lines as those operated by the refining company and having only an incidental use in connection with the real revenue producing business for which the company was incorporated. The different statutes discussed point to the correctness of such conclusion.

■ In the light of the statutes under consideration it is not believed that the length of the pipe line is material in determining the plaintiff's liability for the tax. We do not believe that 65 miles in length would bring the pipe line within the contemplation of this tax law any more than 500 feet of pipe line that carries the oil from the company's two or three storage tanks to the distilleries. Should the time come when length or size would become a material element in determining the applicability of such a statute to an oil pipe line the Legislature will doubtless make the appropriate amendment to that effect. No such action has been taken and the length of the pipe line within itself is deemed immaterial to the decision of the question before us.

That the plaintiff, with its gathering system of pipe lines incident to its refinery business, is not subject to the tax is supported by the logic we discover in illustrations taken from the brief of the plaintiff. For instance, suppose a sawmill owns and operates several miles of railway trackage into the timber producing lands in order to supply its mill with timber, limiting the use of such trackage to the mill, carrying no timber or freight for anyone for hire. In the broad meaning of the word "business" it would be engaged in the business of hauling logs by railroad. It could be argued that it was saving for the mill company that which it would have been compelled to pay out to others to get the logs to the mill. Nevertheless, the mill company would not be doing business of the same character as an incorporated railroad company.

If an oil company with its refinery located on the opposite side of the bayou from the city of Galveston ferries its own employees back and forth across the bayou without charge, and limits its ferry to such use only, the company would in a certain broad sense be carrying on a ferry business, but it could hardly be held that by operating such ferry for the purpose stated, the oil company would bring itself within the meaning and operation of Art. 7105. Hence, it does not appear that the Legislature in the use of the words "and every * * * individual, company, corporation or association doing business of the same character in this State" intended to embrace all who transported oil through pipe lines as a mere incident of some business not at all of the nature of the business of oil pipe line companies within the terms of Art. 7105.

We do not think the opinion in Reagan County Purchasing Co. v. State, Tex.Civ. App., 110 S.W.2d 1194, has any special bearing on the issue here involved. The very great difference in the facts involved in the respective cases render the opinion of little or no value here. As we interpret the record, some of the distinguishing features are: The Purchasing Company was organized to transport oil, while the plaintiff here was incorporated to refine oil. The chief, if not the sole, business of the Purchasing Company was the "transportation" of oil for a price, while the chief concern of the plaintiff is to refine crude oil. Transporting oil was the main business of the purchasing company, while the transportation feature is a mere incident in the plaintiff's business. The pipe line was necessary to the life of the purchasing company, the very soul of its existence, while the plaintiff (corporation)

is necessary to the life of the gathering system. In the Reagan case, transportation of oil by pipe line was the real basis of revenue, while the refining of oil by plaintiff is the basis of its income.

Further, the Purchasing Company, whether incorporated as a pipe line company or not, was not operating a strictly private pipe line, limited in its use to some other business, which other business was its chief concern. The precise ground upon which the court based that opinion is not entirely clear, since there was more than one ground upon which it could be based. Regardless of its name, the court may have considered the Purchasing Company as doing business of the same character as an incorporated oil pipe line company, or a common carrier pipe line company. In the beginning of the opinion it is stated "appellant is a pipe line company." Upon the clear facts of the case, the Purchasing Company could well have been considered an incorporated oil pipe line company, and, in any event, the real purpose of its existence was the transportation of oil in a congested field at so much per barrel.

For out-state authorities supporting this decision, see Magnolia Pet. Co. v. State, 175 Okl. 11, 52 P.2d 81; Shaffer Oil & Ref. Co. v. County Treasurer, 175 Okl. 6, 52 P.2d 76; General Refining Co. v. Davidson County, 139 Tenn. 401, 201 S.W. 737.

Again, Art. 7105 was evidently intended to embrace within its terms only such property or facilities as produced for the owner within and of itself, separate and apart from any other business of the owner, a tangible revenue or income. The plaintiff's gathering system does no such thing, and we fail to discover in this gathering system an intangible value to which the tax measure attached.

The appellees have filed in this appeal a most excellent brief. Obviously we do not agree with their construction of the statute involved. We do not think it susceptible to the construction for which they contend; and since the points raised and deemed controlling have been carefully considered, this opinion will not be extended to give special mention to another theories advanced or relied on.

For the reasons assigned, the judgment of the trial court is reversed and judgment is here rendered for appellant, enjoining the collection of the taxes.