## RAILROAD COMMISSION v. COL-TEX REFINING CO.

### No. 9926.

Court of Civil Appeals of Texas. Austin.

Dec. 20, 1950.

Rehearing Denied Jan. 10, 1951.

Price Daniel, Atty. Gen., and Charles E. Crenshaw, Asst. Atty. Gen., for Railroad Commission.

Wallace H. Scott, Jr., of Austin, for Intervenor, Howard Co. Producers and Royalty Ass'n.

S. S. Brooks, and W. H. Brown, both of Oklahoma City, Okl. (John W. Stayton, of Austin, and Brown, Darrough & Ball, of Oklahoma City, Okl., of counsel), for appellee.

HUGHES, Justice.

Col-Tex Refining Company seeks by this suit to invalidate and enjoin the enforcement of the following order made by the

Railroad Commission of Texas on November 29, 1949:

"It is ordered by the Railroad Commission of Texas that Coltex Refining Company purchase and take all oil offered it for purchase, from its connections in the Howard Glasscock, Iatan East Howard, Iatan North Howard, Snyder, Westbrook, Sharon Ridge 1700 and Sharon Ridge 2400′ Fields, including its Coffield & Guthrie, Inc., connection, ratably and that the total quantity of crude oil purchases and takes from each well in said fields, including the wells served by the gathering system of Coffield & Guthrie, Inc., shall be the same percentage of the allowable of such wells that the total purchases and take of Coltex Refining Company bears to the total allowable assigned by the Commission to all such wells, this without discrimination in favor of one producer or person as against another in the same field, and without discrimination between fields.

"It is further ordered that if Coltex Refining Company should during any calendar month hereafter restrict its purchases and takes of crude oil from any of its connections in the Howard Glasscock, Iatan East Howard, Iatan North Howard, Snyder, Westbrook, Sharon Ridge 1700′ and Sharon Ridge 2400′ Fields to less than the allowable assigned by the Commission to the wells from which Coltex Refining Company purchases and takes oil in said fields, then the total quantity of crude oil purchases or takes from each such well, including those served by Coffield & Guthrie, Inc. connections, during such month shall be the same percentage of the allowable of such well that the total purchases and takes by Coltex Refining Company from all such wells bears to the allowable assigned by the Commission to all such wells, this without discrimination in favor of one producer or person as against another in the same field, and without discrimination between fields."

The validity of this order depends upon a proper construction of the Common Purchase Act, Acts 41st Leg., 5th C.S. 1930, p. 171, as amended by Acts 42nd Leg., 1st C.S. 1931, p. 58, Art. 6049a, Vernon's Ann. Civ.St., and the application or non-application of such Act, particularly Secs. 8 and 8aa, as so construed to the undisputed fact situation disclosed by this record.

Col-Tex owns and operates 65 miles of oil pipe lines in Mitchell, Howard, Glasscock and Scurry Counties; but it is not a common carrier pipe line. Col-Tex Refining. Co. v. Hart, Tex.Civ.App., 144 S.W.2d 909 (Writ Ref.). It also owns an oil refinery in Colorado City in Mitchell County.

As part of its pipe lines, Col-Tex has gathering systems in each of the oil fields named in the above order of the Commission, except in the Sharon Ridge fields, in Scurry and Mitchell Counties. The oil from the Sharon Ridge fields is gathered by Coffield & Guthrie, Inc., a common carrier pipe line company, and delivered to Col-Tex at its Westbrook Station, a distance of some 8 to 12 miles.

The contract between Coffield & Guthrie, Inc., and Col-Tex regarding this Sharon Ridge oil provides that it shall deliver all oil which it can gather or procure in these fields to Col-Tex at its Westbrook Station as to which Col-Tex "here now promises, contracts and agrees to take, and it here now purchases each and all of the crude oil so procured, transported and delivered to it by said Coffield & Guthrie, Inc., as aforesaid, and promises and agrees to pay to said Coffield & Guthrie, Inc., at Rockdale, Texas, the price posted by Coffield & Guthrie, Inc., which price shall be based on average posted price by any three of the major companies for like grades of crude oil in the area in which it is received on the day on which it is received by said Col-Tex Refining Company, plus twelve and one-half cents per barrel."

This contract further provided that: "The title to such oil shall remain in Coffield & Guthrie, Inc., until delivered in the Col-Tex Refining Company's tanks, at which time the title shall pass to said Col-Tex Refining Company. Said Col-Tex Refining Company shall have no control nor right to control, nor right to exercise any authority over the manner of gathering, transporting or delivering any of said oils, but all of the same shall be under the ex-

clusive control and management of Coffield & Guthrie, Inc."

The pipe line facilities of Coffield & Guthrie, Inc., are the only pipe line facilities connected with production in the Sharon Ridge fields.

During the year 1949 Col-Tex purchased less than the allowable production from its connections in the Howard Glasscock, Iatan East Howard, Iatan North Howard, Westbrook and Snyder fields, but during the same period it took 100% of the allowable production from the Sharon Ridge fields under its contract with Coffield & Guthrie, Inc. Protests of producers and royalty owners in the slighted fields to the Railroad Commission prompted promulgation of the order copied above. Representing some of these interests is the intervenor Howard County Producers and Royalty Owners Association.

There are only two questions presented by this appeal:

(1) Whether Sec. 8aa, Art. 6049a, V.A. C.S., requires common purchasers of oil therein defined to purchase without unjust and unreasonable discrimination as between fields; and, if in the affirmative,

(2) Whether the Sharon Ridge fields should be included in the ratable purchase order along with the other named fields.

The trial court, without a jury, held that Col-Tex is a common purchaser under Sec. 8aa, Art. 6049a, as to all involved fields except the Sharon Ridge fields and that such section while it requires a common purchaser to purchase without discrimination in favor of one producer or person as against another in the same field that it does not require a common purchaser to purchase without unjust or unreasonable discrimination as between different fields.

Judgment was accordingly rendered cancelling the Commission order of November 29, 1949, and permanently enjoining its enforcement.

We have no difficulty in deciding the first question in the affirmative.

Section 8aa reads: "In addition to persons enumerated in Section 8, hereof, any and all other persons, association of persons, or corporations, operating any pipe line, which may now, or hereafter, purchase crude oil, petroleum, or natural gas in this State, whether they be common carriers or affiliated with common carriers or not, shall be a common purchaser of such crude oil, petroleum or natural gas, and shall purchase crude oil, petroleum or natural gas, offered it for purchase without discrimination in favor of one producer or person as against another as provided in Section 8 hereof."

The material portion of Section 8, referred to in Section 8aa, reads: "Every person, association of persons or corporation who purchases crude oil or petroleum in this State, which is affiliated through stock-ownership, common control, contract, or otherwise, with a common carrier by pipe line, as defined by law, or is itself such common carrier, shall be a common purchaser of such crude petroleum and shall purchase oil offered it for purchase without discrimination in favor of one producer or person as against another in the same field, and without unjust or unreasonable discrimination as between fields in this State; * * *."

It will be observed that Section 8 defines as common purchasers of oil those purchasers of oil who are common carriers of oil and their affiliates and that Section 8aa enlarges this definition by adding all other purchasers who operate a pipe line whether or not they be common carriers or their affiliates.

The provision in Section 8aa that those therein defined shall purchase oil "without discrimination in favor of one producer or person as against another *as provided in Section 8* hereof", has the obvious effect of transplanting from Section 8 to Section 8aa the words, "* * * in the same field, and without unjust or unreasonable discrimination as between fields in this State * * *."

Appellee contends that the reference to Section 8 in Section 8aa incorporated only the words, "in the same field," in Section 8aa. We are at a complete loss to understand why the reference made in 8aa would incorporate a part of the discrimination de-

scribed in Section 8 but not all of it. The Legislature indicated no such arbitrary construction, the effect of which would be to allow a certain class of common petroleum purchasers to discriminate between different oil fields while denying the same privilege to other common purchasers, and we have neither the power nor the desire to make such an unreasonable construction.

■ We are clearly of the opinion that the trial court erred in construing Section 8aa as not prohibiting interfield discrimination as defined in Section 8.

A more difficult problem is presented by the second question.

Appellee's position is that it is not a common purchaser under Art. 6049a with respect to the Sharon Ridge field, because its pipe line does not enter that field and because it purchases no oil from producers in that field.

Factually, this position is not quite accurate because Coffield & Guthrie, Inc., is one of the producers in the Sharon Ridge fields.

There can be no question but that the primary purpose of the Legislature in enacting the common purchaser statute was to prevent private proration of petroleum production, the inevitable result of which is, as exemplified by this record, that a few are favored at the expense of many.

If by fair construction of the statutes this worthy legislative purpose can be upheld as against the arrangement here disclosed, it is our duty to do so; for if the purely artificial (artificial at least insofar as the problem before the Legislature was concerned) relationship between Col-Tex and Coffield & Guthrie, Inc., has the effect claimed by appellee, then duplication of such arrangements by others would ultimately result in nullification of the common purchaser law.

The gist of appellee's argument in support of its position here is found in the following excerpt from its brief: "It is perfectly plain from the provisions of the Common Purchaser Act (Art. 6049a, Vernon's Tex.Stats., 1948) that the Legislature has sought to regulate the purchase of oil in the field and has not sought to control the purchase of oil after it has been purchased in a field and transported from the field. In fact it would be well nigh impossible to enact a statute that would fairly and reasonably control the purchase of crude oil after it had been purchased in a field and transported from the field."

Attempting to demonstrate the correctness of this argument, appellee skilfully analyzes numerous sections of the law which show that the Legislature had in mind as the target of its regulations those persons who bought oil from producers in the field. The argument is excellent as far as it goes but, as will appear later, we do not believe it goes far enough.

We also readily agree with appellee that the Legislature could not follow crude oil to all extremities of the earth and there control its purchase and sale. Likewise, we agree that the Legislature did not attempt this vain undertaking. It did, however, in our opinion, adequately provide against defeat of the legislative purpose by any such arrangement as is found to exist between Col-Tex and Coffield & Guthrie, Inc.

Such provision is found in Section 8 of the Act, which, leaving out inapplicable and superfluous words, reads: "Every person who purchases crude oil or petroleum in this State, which is affiliated through contract or otherwise with a common carrier by pipe line shall be a common purchaser."

Appellee "purchases crude oil in this State"; it is "affiliated through contract with a common carrier by pipe line" (Coffield & Guthrie, Inc.). Therefore, it "shall be a common purchaser."

We do not mean to say that just any kind of a contract with a common carrier pipe line would be such affiliation as to make one a common purchaser. All that we need say and all that we do say is that a contract of the nature as the one existing between Col-Tex and Coffield & Guthrie, Inc., is sufficient for this purpose.

■ A necessary consequence of these conclusions is that the order of the Railroad Commission was proper and valid and that the judgment of the trial court enjoining its enforcement is erroneous. We,

therefore, reverse this judgment, vacate the injunction granted in it and here render judgment that appellee take nothing by its suit.

Reversed; injunction dissolved and judgment rendered for appellant.