CUMBERLAND OPERATING
COMPANY, Appellee,

v.

John L. OGEZ, Chairman of the Board
of Lincoln County Commissioners, et
al., Appellants.

No. 63015.

Supreme Court of Oklahoma.

Feb. 9, 1988.

Dawson, Cadenhead & Kite by Bill Dawson, Seminole, for appellee.

Bill Roberson, Dist. Atty. of Lincoln County by David Welch, Chandler, for appellants.

DOOLIN, Chief Justice.

We address two questions today: first, whether salt water disposal is necessary for the production of oil and gas, thereby exempting a salt water disposal well from

payment of ad valorem taxes upon payment of gross production taxes; second, if the answer to the first question is affirmative, whether the tax on the salt water disposal well should be apportioned on a pro rata basis so that the proportion of the well used for disposal of salt water from the lease on which the disposal well stands is relieved of ad valorem taxation but the proportion of the well used for disposal of salt water from another lease will be taxed on an ad valorem basis.

## FACTS

Cumberland Operating Company [Cumberland] operates three wells on the Allen lease in Lincoln County. Two of the wells are marginal producers, the third is a salt water disposal well. The two wells produce daily a combined total of six (6) barrels of oil and approximately one-hundred-fifty (150) barrels of salt water. Prior to 1981, Cumberland paid to have the salt water trucked to an off-site disposal well. In December of 1980, Cumberland obtained order number 180496 from the Corporation Commission, which permits Cumberland to dispose of up to two-hundred (200) barrels of salt water daily in the Allen No. 1. Cumberland began disposing of the salt water generated by the Allen lease into the Allen No. 1. Additionally, Cumberland disposes of fifteen (15) barrels of salt water daily from the adjoining Douglas lease into the Allen No. 1. Therefore, 91% of the salt water disposed of in the Allen No. 1 comes from the Allen lease, 9% from the Douglas lease.

Cumberland paid gross production taxes on the Allen lease during 1982. On May 12, 1983, the Lincoln County Tax Assessor notified Cumberland that the Allen No. 1 would be subject to ad valorem taxes in the amount of $6,250.00, plus a penalty of $1,250.00, for a total ad valorem assessment of $7,500.00. Cumberland immediately protested the ad valorem assessment, and notified the Tax Assessor that gross production tax had been paid on the Allen lease in the amounts of $8,118.92 for 1982 and $1,866.71 through April 1983. Cumberland subsequently filed a complaint for erroneous assessment and petition for correction to the Lincoln County Board of Tax Roll Corrections as provided for in 68 O.S. 1981, § 2460. The Board failed to give Cumberland notice and opportunity to be heard and denied the complaint on March 29, 1984. Cumberland filed a petition for a temporary injunction with the Lincoln County District Court and a trial de novo was had on August 7, 1984.

The trial court found: first, as a matter of law, disposal of salt water is a functionally integrated part of the production of oil and gas, as a result of which the Allen No. 1 qualifies for exemption from ad valorem taxation upon payment of gross production tax. Second, that disposal of salt water from the Douglas lease is not a functionally integrated part of the production of oil and gas from the Allen lease and the Allen No. 1 would be taxed proportionately as a commercial salt water disposal well at 9% of the ad valorem rate assessed, or $675.00.

The appellant [County Commissioners] challenges that part of the trial court's decision which found that disposal of salt water is, as a matter of law, a part of the production of oil and gas, as a result of which a salt water disposal well is relieved of payment of ad valorem taxes upon payment of gross production taxes. Cumberland challenges that part of the trial court's ruling that the disposal of salt water attributed to the Douglas lease should be taxed proportionately to the whole at the ad valorem rate. Both parties raise issues of first impression.

### I.

The first question is whether the disposal of salt water is necessary for the production of oil and gas, thereby exempting a salt water disposal well from Ad Valorem taxation upon payment of Gross Production taxes.

Title 68 O.S.1981, § 1001(b) levies a 7% tax on the gross value of the production of petroleum or other crude or mineral oil and a 7% tax on the gross value of the production of natural gas and casinghead gas. Section 1001(g) provides that payment of the gross production tax on oil and gas

"shall be in full, and in lieu of all taxes by the state, counties, cities, towns, school districts, and other municipalities ... upon the machinery, appliances and equipment used in and around any wells...." Section 1001(h) further provides that:

No equipment, material or property shall be exempt from the payment of ad valorem tax by reason of payment of the gross production tax ... except such equipment, machinery, tools, material or property as is *actually necessary and being used and in use in the production* of ... petroleum or other crude oil, or other mineral oil or of natural gas and casinghead gas; and it is expressly declared that no ice plants, hospitals, office buildings, garages, residences, gasoline extraction or absorption plants, *water systems*, fuel systems, rooming houses and other building, nor any equipment or material used in connection therewith, shall be exempt from ad valorem tax. (emphasis added)

Both Cumberland and the County Commissioners rely on *Home–Stake Production Co. v. Board of Equalization*, 416 P.2d 917 (Okl.1966). Cumberland candidly admits that *Home–Stake* dealt with water flood systems, not salt water disposal wells, but argues that the test of "actually necessary and being used and in use in the production of oil" applied by this Court in *Home–Stake* applies to exempt salt water disposal wells from ad valorem taxation. The County Commissioners argue that a salt water disposal well is a "water system" expressly excluded by the legislature from qualifying for gross production taxes in Section 1001(h). In the alternative, the County Commissioners argue that a salt water disposal well fails the "actually necessary and in use" test formulated in *Home–Stake.*

Clearly, the "water systems" contemplated by the legislature in the enactment of § 1001(h) were systems of ordinary plumbing which might logically be associated with facilities such as "ice plants, hospitals, office buildings," and the like. Whether a system or structure falls within the definition of one of the items named in the statute as not exempt from ad valorem taxation is a question of fact to be resolved by the trier of fact.

Water flood systems and a salt water disposal well are indeed separate systems and have different purposes.[1] A water flood system is a secondary recovery method in which water is injected into an oil reserve for the purpose of washing the oil out of the reservoir rock and into the bore of a producing well.[2] A salt water disposal well, on the other hand, returns salt water produced with the oil to the formation below the oil-water contact line or to some other formation, so as to prevent surface pollution.[3] A salt water disposal system is necessary because salt water cannot be disposed of on the surface, but must be pumped back into the subsurface to prevent pollution.[4]

Salt water is a natural constituent, in varying quantities, of oil pumped from the ground and must be disposed of properly. Disposal of salt water is heavily regulated by the State through the office of the Corporation Commission.[5] Indeed, the legislative intent is "it is in the public interest to protect the waters and lands of the State against pollution and, for that purpose, it is necessary and desirable in the exercise of the police power of the State" to grant the Corporation Commission the power to enter upon the surface of the land to plug, replug or repair any leaking salt water disposal well.[6] Further, salt water shall not

1. *See e.g., Briggs v. Gaddis,* 88 Ill.Dec. 737, 133 Ill.App.3d 704, 479 N.E.2d 350, 87 O. & G.R. 10 (1985). [A salt water disposal well is not a water flood secondary recovery operation, even though a salt water disposal system may inadvertently increase the recovery from a field.]

2. 8 William & Myers, Manual of Oil and Gas Terms, 959 (1984) [Hereinafter William & Myers]. *See also* Oklahoma Corporation Commission Rule 3–300(a).

3. 8 William & Myers at 791. *See also* Corporation Commission Rule 3–300(b).

4. 8 William & Myers at 790.

5. 52 O.S.1981, § 139.

6. 52 O.S.1981, §§ 309, 310.

# 108

be permitted to flow over the surface of the land.[7]

At trial, the Permit Coordinator of the Underground Injection Control Department of the Corporation Commission testified that, under current rules, salt water may only be disposed of by injection into disposal wells. No other means of disposal is permitted. If an operator fails to properly dispose of salt water, his producing leases which generated the salt water are shut down, which remedy the Corporation Commission has occasionally applied. As previously mentioned, Cumberland obtained a permit to operate the Allen No. 1 as a salt water disposal well. Cumberland was in compliance with all commission rules for operation of this well.

The State, through exercise of the police power, imposes upon the operator of an oil and gas lease a duty to safely dispose of salt water generated by that lease. As a result, proper disposal of salt water is actually necessary for the production of oil and gas. The Allen No. 1 is being used and is in use for disposal of salt water generated by the Allen lease. Therefore, the Allen No. 1 is being used and is in use for the production of oil and gas. Consequently, the Allen No. 1 is exempt from payment of ad valorem taxes upon payment of gross production taxes and we affirm that portion of the trial court's ruling. While we have herein decided that disposal of salt water is, as a matter of law necessary for the production of oil and gas, the question of whether any particular salt water disposal well is exempt from ad valorem taxation is a question of fact, not a question of law, and depends on the facts and circumstances of the individual case.

## II.

The second question is whether a salt water disposal well should be taxed pro rata by Ad Valorem taxation in proportion to the salt water disposed of from a separate lease.

It is a well established rule in Oklahoma:

[W]hen property is devoted to two uses, one of which, if exclusive, would excuse it from the payment of ad valorem taxes under the gross production tax law, the other of which, if exclusive, would subject it to ad valorem taxes, and where the different component parts of such property are incapable of classification according to exclusive use, the taxable status of such property should be determined on a pro rata basis according to use and *the proportionate part of the property that is devoted to a use not connected with the production of oil and gas should be listed and assessed for ad valorem taxation, and the value of the property should be allocated accordingly.* (emphasis added).

*Shaffer Oil Refining, Co. v. County Treasurer of Creek County,* 175 Okl. 6, 52 P.2d 76, 80 (1935). In the instant case we found earlier that disposal of salt water generated by a lease is actually necessary in the production of oil and gas under of the exercise of the police power. At first glance it would seem, then, that it matters not whether the salt water disposed of in the Allen No. 1 came from the lease on which the Allen No. 1 stands or whether the salt water comes from the adjoining Douglas lease. The trial court found a difference between disposal of salt water produced by one's own lease and the *commercial disposal* for compensation of salt water generated by another lease. We agree with the trial court's ruling but disagree with the rationale used to reach that result.

All property, both personal and real, in the State is subject to ad valorem taxation, unless specifically exempt by law or by reason of payment of an in lieu tax.[8] Property which is exempt from ad valorem taxation, in which the taxpayer is relieved of the duty of paying the tax, is expressly enumerated in 68 O.S.1981, § 2405. Property such as that owned by the federal government, property of the state or a subdivision thereof, eleemosynary institutions, property used exclusively and direct-

7.  52 O.S.1981, § 296.

8.  68 O.S.1981, § 2404.

ly for fraternal or religious purposes, and other expressed categories, is exempt from the payment of ad valorem taxes. Property used for the production of oil and gas is not one of the enumerated exceptions to the payment of ad valorem taxes.

By enactment of the Gross Production Tax Act [68 O.S.1981, §§ 1001–1022], the legislature imposed a special tax in lieu of and as a substitute for the general ad valorem tax on the oil and gas and the property of the producer used in the production of oil and gas.[9] Payment of gross production taxes in lieu of ad valorem taxes, however, is not exclusive. Both taxes may apply. For example, if the producer has two identical machines, both of which are necessary to the production of oil and gas, but one machine is being used and is in use in the production of oil and gas and the other machine is in storage as a spare part, the first machine is relieved of payment of ad valorem taxes by payment of the substitute gross production tax. The second machine, however, is not being used and in use for the production of oil and gas. Ad valorem taxation, therefore, applies to the second machine.[10]

 Here, the disposal of the salt water generated by the Allen lease is made necessary by exercise of the police power. The State imposes a duty on Cumberland to properly dispose of the salt water generated by the Allen lease. The record is silent, however, that Cumberland is under a duty imposed by the State to properly dispose of the salt water generated by the Douglas lease. And the salt water generated by the Douglas lease and disposed of in the Allen No. 1 is not being used or in use for the production of oil and gas on the Allen lease. That proportion of the Allen No. 1 not used for the production of oil and gas on the Allen lease is subject to ad valorem taxation.

9. *Continental Oil Co. v. Oklahoma State Board of Equalization,* 570 P.2d 315, 318 (Okl.1976); *Apache Gas Production Corp. v. Oklahoma Tax Commission,* 509 P.2d 109, 113–14 (Okl.1973).

10. *See e.g., Home–Stake,* 416 P.2d at 923. [Electric systems, water lines and gathering systems

The decision of the trial court should be, and hereby is, AFFIRMED.

DOOLIN, C.J., HARGRAVE, V.C.J., and LAVENDER, OPALA, KAUGER, JJ., concur.

HODGES, SIMMS and SUMMERS, JJ., concur in part I; dissent from part II.

are exempt from ad valorem taxation if actually necessary and being used and in use for the production of oil and gas; if these systems are not in use for the production of oil and gas, exemption from ad valorem taxation will not apply.]